619 P.2d 1110

Kenneth D. MATTHEWS,
Claimant-Respondent,

v.

BUCYRUS–ERIE COMPANY, Employer,
and Department of Employment,
Defendants-Appellants.

No. 12929.

Supreme Court of Idaho.

April 10, 1980.

On Rehearing Dec. 17, 1980.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Roger B. Madsen, Deputy Attys. Gen., Boise, for defendant-appellant Dept. of Employment.

L. Charles Johnson, of Johnson & Olson, Pocatello, Mark A. Lies, II, of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant Bucyrus-Erie Co.

Ronald R. Rowland, Pocatello, Marshall C. Aungier, Idaho Falls, for claimant-respondent.

DONALDSON, Chief Justice.

This appeal is brought by the Department of Employment and Bucyrus-Erie Company from an order of the Industrial Commission reversing a decision of the Department of Employment and finding claimant-respondent Kenneth D. Matthews eligible for unemployment benefits.

Claimant Matthews was employed by appellant Bucyrus-Erie Company (hereinafter, B–E) from December 1975 until August 23, 1977, when his employment was terminated by the company for allegedly obtaining a leave of absence under false pretenses. During the period of his employment at B–E, Matthews was absent from work or tardy arriving for work on several occasions due to a drinking problem and received an admonition for excessive absenteeism.

In June 1977, Matthews requested a leave of absence for approximately 30 days, based on personal reasons. Matthews wanted the leave so he could attempt to alleviate his drinking problem in a situation removed

from the job-related stress he felt was aggravating the problem. However, not wanting to disclose his drinking to the company management for fear it might jeopardize his employment, he based his request only on "personal reasons" and it was denied.

Thereafter, the claimant became aware of a recently-created program whereby employees with drug or alcohol problems could obtain counseling and treatment. In an interoffice memorandum to all employees, the program was explained as follows:

"The Bucyrus-Erie Pocatello Plant Management is concerned about employees who have a problem controlling their intake of alcohol. We also see a need to educate and help any employee who uses other drugs as well as alcohol. To accomplish this, Management is establishing a confidential referral service and will provide related educational materials through the Employee Assistance Program.

Alcohol and drug abuse are illnesses which can be cured. Bucyrus-Erie is not responsible for any troubled employee, but will try to refer the individual to local specialists.

.     .     .     .     .

The doctor or agency to whom you are referred *may prescribe intensive therapy. If so*, you may request, in writing a thirty (30) day leave of absence.

.     .     ." (emphasis added)

When claimant became aware of the new program, he discussed his problem with the company doctor and nurse, who referred him to the Pocatello Alcoholic Rehabilitation Center. Matthews was the first such referral under the program.

Claimant reported to the Center where he was seen by Miss Lynn Evans, a counselor. She testified that when she saw claimant, she felt it was necessary for him to obtain some sort of treatment, and they agreed he should attend the 28-day inpatient program at a facility in Gooding, Idaho. Claimant required a few days to collect his affairs before leaving, and was to contact Miss Evans again in a day or two. Miss Evans then filled out a "REPORT OF TREATMENT FACILITY" form as follows:

"Treatment Recommended: I feel that Ken Matthews should receive in-patient treatment at that Center in Gooding, Idaho and that a 30 day Medical leave is appropriate beginning   .   .   .. Estimated length of treatment time: 28–35 days. Will employee accept treatment? Yes. Recommendation for Follow-up and by Whom: Counseling with Alcoholic Rehabilitation Center."

At the bottom of the form was the statement "The above information may be submitted to my employer," immediately beneath which claimant placed his signature.

Claimant returned the "REPORT OF TREATMENT FACILITY" form to the company medical department and filled out and signed a "REQUEST FOR LEAVE OF ABSENCE" form, citing as the reason for the request, "Medical; alcohol [sic] rehabilitation." The request was approved and the company made arrangements for another employee to perform claimant's duties during his absence.

Claimant thereafter contacted Miss Evans at the Rehabilitation Center and told her he had a fear of hospitals and needed a few more days to think about it. Claimant testified that instead of again contacting Miss Evans or entering the Center at Gooding, he "panicked" and "just started driving" with a friend in his car. They traveled to Alaska, returning a few days before the expiration of claimant's 30-day leave of absence. Claimant returned to work, and continued for about two weeks. At that time it first came to the attention of company management that claimant had not undergone treatment at the Gooding facility and he was terminated for allegedly obtaining a leave of absence under false pretenses.

Claimant filed a claim with the Department of Employment for unemployment benefits. The department denied the claim, finding claimant ineligible for benefits because his unemployment was the result of a discharge for employee misconduct. Claimant then filed a Request for Redetermina-

tion which was granted, affirming the initial determination of ineligibility. Appeal was then taken to the Department of Employment Appeals Examiner, who again affirmed the denial of benefits. Claimant then appealed to the Industrial Commission, which reversed the finding of misconduct and held claimant eligible for unemployment benefits. Employer B–E and the Department of Employment now appeal from the decision of the Industrial Commission.

■ The ultimate conclusion of the Industrial Commission was

"[Claimant's] actions arose out of his panic at the thought of entering a hospital. The result of this panic was his attempt to deal with his alcohol problem in his own way. *This shows that the claimant did not willfully, intentionally, or deliberately disregard . . . the standards of behavior which the employer has a right to expect of his employees.* He was therefore not guilty of misconduct as defined by the Supreme Court." (emphasis added)

In ruling that claimant was not guilty of misconduct because he did not "willfully, intentionally or deliberately" disregard the standards of behavior which the employer has a right to expect of his employees, the referee for the Industrial Commission misapplied the definition of misconduct laid down in *Johns v. S. H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957):

"While the term 'discharged for misconduct' as used in Sec. 72–1366(f), I.C. [now I.C. § 72–1366(e)] has been variously defined, we think the term should be interpreted as meaning willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; *or a disregard of standards of behavior which the employer has a right to expect of his employees.*" 78 Idaho at 548, 307 P.2d at 219. (emphasis added)

This definition was recently reaffirmed as the law in Idaho in *Jenkins v. Agri-Lines Corp.*, 100 Idaho 549, 602 P.2d 47 (1979).[1] There is no requirement in the *Johns* definition of misconduct that the claimant's disregard of standards of behavior must be found to have been subjectively willful, intentional or deliberate. Rather, the test for misconduct in standard-of-behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case. The employee's subjective state of mind is irrelevant.

■ Because the Industrial Commission erroneously interpreted the definition of misconduct as requiring a subjectively willful, intentional or deliberate disregard of the standards of behavior which appellant B–E had a right to expect of its employees, the decision of the Industrial Commission is reversed and the cause remanded for further proceedings in accordance herewith. Costs to appellant.

SHEPARD and BAKES, JJ., concur.

McFADDEN, Justice, dissenting.

In *Johns v. S. H. Kress Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1959), this court stated that "misconduct" such as to lead to the denial of unemployment compensation benefits under I.C. § 72–1366(e) could take three forms. The majority cites *Johns* and lists the three forms: disregard of the employer's interest, violation of its rules, or disregard of standards of behavior which the employer has a right to expect from its employees. For the first time in the 23 year history of the *Johns* standard, attention is now called to the fact that when the promulgating court listed the three forms of misconduct it appended words indicating a requirement of intent to the first two but not to the third. In so doing, the majority takes the unprecedented position that un-

---

1. In *Jenkins*, Justice Bistline opined in dissent that the misconduct issue in *Johns*, presented a mixed question of law and fact, and therefore the decision of the Industrial Commission could not be reversed on appeal if supported by competent and substantial evidence. Such is not the case here, as the question whether the Industrial Commission correctly interpreted our decision in *Johns* is purely a question of law.

employment compensation benefits may be denied to a claimant who has acted unintentionally. Because I believe this new stance is not supported by the employment security law itself, by the pertinent Idaho cases, or by common sense, I respectfully dissent.

Chapter 13 of Title 72 of the Idaho Code comprises the "Employment Security Law," I.C. § 72–1301, which, among other things, defines eligibility for unemployment compensation benefits. Section 72–1302 acknowledges the hardships which unemployment imposes on individuals, and states that the act's purpose is to relieve some of these hardships for individuals who "become unemployed *through no fault of their own.*" (Emphasis added.) The drafters of the act thus specifically included fault as a crucial element in determining the reach of its benefits.

My search has yet to reveal a single Idaho case where unemployment benefits were denied an individual whose misconduct was other than intentional.[1] In at least one case, in fact, the court held benefits awardable because the misconduct was only inadvertent. *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976). Indeed, *Johns* itself involved an intentional act, so that its language referring to a different state of mind is dicta. In the sentence which immediately follows the language quoted by the majority the *Johns* court summarized its position and stated its holding: "[t]he discharge of an employee for *intentional, wilful* misconduct deprives him of the right to unemployment compensation." 78 Idaho at 548, 307 P.2d at 219 (emphasis added).

The language of *Johns* was not original. It first appeared in Idaho in a case decided some four years earlier, *Mandes v. Employment Sec. Agency,* 74 Idaho 23, 255 P.2d 1049 (1953). In *Mandes* the language was given proper attribution, the court noting its origin in 48 Am.Jur. § 38, pp. 541–2. A look at the full text of the Am.Jur. section indicates that its authors, at least, had no

doubt about the requirement of intentional conduct. They wrote that to deny benefits there

"must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

.    .    .    .    .

Neither is mere inefficiency, unsatisfactory conduct, errors in judgment, or the like to be deemed misconduct [citation omitted]."

The authors of the source relied on by the *Johns* court were careful to address the problem of employee negligence which led to discharge, and to note that it could be considered "misconduct" so as to deny benefits only when it functionally amounted to intentional conduct. It specifically ruled out considering errors in judgment to be "misconduct." The updated Am.Jur.2d position is similar, although more explicit:

"Work-connected negligence or inefficiency constitutes misconduct within the meaning of an unemployment compensation statute precluding a discharged employee from unemployment compensation benefits when the negligence or inefficiency is of such degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations. Conversely, mere inefficiency, unsatisfactory conduct, *failure of good performance as the result of inability or incapacity,* inadvertencies, isolated instances of ordinary negligence, or good-faith errors in judgment or discretion, are not considered misconduct for this purpose." 76

---

1. In *Jenkins v. Agri-Lines,* 100 Idaho 549, 602 P.2d 47 (1979), Justice Bistline argued in dissent that Jenkins' failure to notify his employer

of his intent to be absent from work was, at worst, negligent, although the majority did not so hold.

Am.Jur.2d Unemployment Compensation § 54, p. 948 (emphasis added, citations omitted).

*See* CCH Unemployment Insurance Rptr., Vol. 1B, ¶ 1970.

In addition, neither of the decisions of this court which held a claimant ineligible for benefits as a result of a violation of standards of conduct which the employer had a right to expect involved unintentional conduct. *Rasmussen v. Gem State Packing Co.*, 83 Idaho 198, 360 P.2d 90 (1961) (placing metal chain in scrap barrel bound for processing equipment not suited to handle metal); *O'Neal v. Employment Sec. Agency*, 89 Idaho 313, 404 P.2d 600 (1965) (postman discharged after being convicted of lewd and lascivious conduct with minor). In fact, the court has even held that the three categories of *Johns* are not discreet, and that violation of any one of them does not automatically lead to a denial of benefits. *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976); *Hutchinson v. J. R. Simplot Co.*, 98 Idaho 346, 563 P.2d 404 (1977). This suggests how inappropriate is the kind of close reading indulged in by the majority.

All aside from the limits placed on our construction of I.C. § 72–1366(e) by the act itself and by prior cases, the majority's approach has unfortunate policy results. To the extent that an employee realizes that misconduct may result in termination without benefits that misconduct is deterred. Yet there can be no deterrent value in penalizing conduct which is unintentional since the actor, by definition, cannot ponder the consequences of the action. I would also note that under the majority's construction, a denial of benefits based on a violation of the employer's rules requires intentional conduct, while the denial could be based on an *un*intentional, even good faith, breach of "standards of behavior which the employer has a right to expect of his employees." To require a showing of more extreme conduct for the violation of duly promulgated rules of the employer places a premium on non-promulgation, and runs counter to notions of due process.

It would not be unkind to say that there are certain aspects of Matthews' story which strain the bounds of believeability, and it is clear that the majority here seeks to remedy what strikes it as an inequitable result. But the Industrial Commission explicitly decided that Matthews did not act intentionally when he decamped for Alaska, and its conclusion, is supported by substantial although obviously conflicting, evidence. I am not sufficiently interested in denying this claimant benefits that I would rewrite a significant portion of the employment security law to accomplish the task. I would affirm the Commission's decision.

BISTLINE, J., concurs.

BISTLINE, Justice, dissenting.

Today we revisit *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978). There claimant was denied benefits on the basis that the Industrial Commission had concluded that claimant's actions were violations of employment rules showing an *intentional* disregard of the employer's interests, notwithstanding a close-coupled dissent which exposed the full text of the Commission's conclusions, with the key word "intentional" singularly among the missing. *Cf. Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976). Nevertheless, *Booth* accomplished the restricting of this Court's interference with Commission determinations which were other than pure law. We also revisit *Jenkins v. Agri-Lines Corp.*, 100 Idaho 549, 602 P.2d 47 (1979). There claimant was denied benefits because of this Court's conclusion that his actions fell into the definition of "misconduct," I.C. § 72–1366(e), which an earlier Court defined in *Johns v. S. H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957), notwithstanding that the *Johns* case was in need of re-examination. The Court-supplied definition of a word of common understanding has over the years served no purpose other than a prop which the Court, as in *Johns*, can use at will in order to sustain result-oriented opinions.

Thus *Johns* has served well as a magic talisman, but not ever to the benefit of the

claimant. Here, as in *Johns*, the Commission unanimously concluded that the claimant's actions did not constitute misconduct so as to destroy a right to the benefits intended to be made available by the employment security law. That should have been the end of it. By applying the talisman, however, and only by applying it the Court is able to reverse the Commission. Its authority for doing so is said to lie in the proposition that the Commission erroneously interpreted the Court's definition of misconduct. In turn the Court itself plays further with the *Johns* definition, and keys in on that part thereof which is said to make it only the subjective state of mind of the employer (not the employee at all) which must be taken into account. I am reminded of the language of Justice Bakes in *Wroble* : "It is manifest that the legislature did not intend that misconduct such as would bar recovery of benefits under the law would be defined by the employer." *Wroble*, 97 Idaho at 904, 556 P.2d at 863. In *Jenkins* I expressed some dismay at our keeping *Johns* alive any longer, and I deeply deplore today's unwarranted extension.

Where we look at a statutory scheme as complete and complex as the Employment Security Law, complete with definitions where thought to be needed, it is indeed manifest that the legislature did not conceive that the word "misconduct" was at all in need of definition. I see nothing in the law which suggests that the legislature thought the word in need of definition, or that this Court should supply one. As to what misconduct is in the field of common relationships, in various contexts, parents know it, children know it, school teachers know it, and even animals know it. No one has convincingly shown me that the Industrial Commission does not know it—which brings me to further mention that which this Court has said so many times that citation is wholly unnecessary: The Commission by reason of its makeup and experience is possessed of a certain expertise in these matters to which the Court should defer.

The case before us is simply that an admitted alcoholic, given leave in order to take treatment, performed exactly as can most often be expected of an alcoholic. The Commission found that this was not misconduct—in which undertaking it should have been unfettered by definitions of this Court. The Commission will recognize misconduct when it meets up with it, and it will have no trouble in finding whether or not the activity of an alcoholic is or is not misconduct within the provisions of § 1366(e). Certain am I that if the employer's report of the prevalence of the affliction, or sickness, as you will, in just its Pocatello plant is generally elsewhere true, the Commission will already have dealt with it. But if not, it still needs no help from this Court other than, perhaps, that which has been heretofore written.

In *State v. Oyler*, 92 Idaho 43, 436 P.2d 709 (1968), in the field of criminal law, as to the propensities of alcoholics, this Court said:

"That a person may be powerless to abstain from more or less continuous drinking to excess of alcoholic beverages has been formally recognized by medical and by legal authorities. Knowingly to impose a probationary condition of total abstentation upon such a person, and revocation of probation *for his predestined failure to keep that condition*, would be patently as vindictive as demanding a lame person run for his freedom; and if during probation the judge were to discover probationer was such a person, it would be impermissibly unjust not to remove that condition." (Emphasis added.)

Is not knowingly to give an alcoholic employee a thirty day leave in which to turn himself in for a cure, and then firing him and sending prominent counsel from Chicago and Pocatello to Boise, Idaho, in an attempt to divest him of even his benefits—all "for his predestined failure" to keep his appointment—patently as vindictive as the Court's illustration above?

*Johns* should be overruled. If the Court declines to do so, it can only be hoped that the legislature will take the matter up. As things stand now, with the release of the

Court's opinion today there is even less stability in this field than there was before. Employers, claimants, and the agencies involved are entitled to something better. A claimant now doesn't know until this Court ultimately passes on his claim whether the benefits he has been awarded will be taken away, or whether he will finally gain them—usually two to four years after his discharge. I cannot but believe that an employee, allegedly discharged for misconduct would prefer to have his final decision at the hands of an appeals examiner, or the Commission—who act with their own expertise in determining whether the actions complained of constituted misconduct, as those agencies apply that word of common understanding—with which they deal on a constant basis.[1]

PER CURIAM.

Petition for rehearing having been granted in the above-entitled cause and the case rebriefed and reargued,

THE MAJORITY adheres to the views expressed in the Court's original opinion.

McFADDEN and BISTLINE, JJ., respectively, adhere to the views expressed in their original dissenting opinions.

---

1. Meanwhile, absent any members of the Court seeing any substance in my view of this case, I go on record as saying that what Justice McFadden has written comes much closer to being the right of it than does the Court's opinion. Regrettably, however, Justice McFadden's opinion merely takes up the cudgel as to misconduct which is intentional enough to disqualify a claimant, and misconduct which does not so measure up—all continuing to pay homage to the Court-supplied definition in *Johns.* And therein lies, and continues to lie the problem facing claimants and employers.