695 P.2d 1231

**George R. DAVIS,**
**Claimant-Respondent,**

v.

**HOWARD O. MILLER COMPANY,**
**Employer-Appellant,**

and

**State of Idaho, Department of Employment, Defendant-Respondent.**

**No. 15136.**

Supreme Court of Idaho.

Oct. 18, 1984.

Rehearing Denied Feb. 13, 1985.

Jesse C. Robison, Pocatello, for employer-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Larry F. Weeks, Deputy Atty. Gen., Boise, for respondent Department of Employment.

Guy R. Price, Pocatello, for respondent Davis.

HUNTLEY, Justice.

This is an appeal from the Industrial Commission, which found that the claimant's unemployment was not the result of a discharge for employment-related misconduct. An unemployment insurance benefit claimant is ineligible for benefits if his unemployment was the result of a discharge for employment-related misconduct. *See* I.C. § 72–1366(e). The record supports the finding of the Commission that the discharge was not for employment-related misconduct.

George Davis was hired as a gas station attendant by the Howard O. Miller Company, and began work January 22, 1982. A few weeks later he was promoted to manager at one of Miller's gas stations and continued in that position until his discharge October 12, 1982. Approximately one month prior to his termination Davis received a $25.00 raise, making his salary $900 per month. Davis, as manager, was charged with supervising the employees and scheduling their shifts, although only one person generally staffed the station at any time. He was also responsible for the preparation of daily reports and bank deposits, which came to over $720,000 over a year's time. Upon his promotion to station manager, Davis occasionally took one to two hours a week off from his shift, substituting other personnel in his place. Consequently, his pay was docked for these absences. These absences were tolerated over several months and evidently no manager was told that substitutions were against company policy. It was not unusual for station managers at other local stations owned by Mr. Miller to leave during their scheduled shifts without official notice to the head office. Such absences appeared to be allowed without recrimination as long as a manager arranged for a replacement in his absence.

Because Davis and those he supervised were not being paid for extra time worked at shift changes and station closings, he arranged a meeting with Miller to request compensation for this extra work. After negotiating with Davis, Miller agreed to grant an extra half-hour's pay per day.

While Davis' management increased business, Miller did not appreciate Davis' lobbying on behalf of his co-workers. Miller then learned that on his job application Davis had failed to mention a prior three to

four week job which he had quit without notice.

On October 5, 1982, Miller discovered that Davis had a co-worker taking his place during part of Davis' shift. The next day when Miller inquired where Davis had been, Davis replied that he had been at a "job interview" (he had actually only been checking into job possibilities).

Although Davis assured Miller that he would not quit without giving notice, Miller decided to immediately train another manager. On October 12, 1982, Miller discharged Davis without notice.

This appeal presents two issues: (1) whether substantial and competent evidence exists to support the decisions of the Industrial Commission, and (2) whether attorney fees on appeal should be awarded.

The scope of review on appeal from decisions of the Industrial Commission is limited to questions of law. *See* Idaho Const. art. V, § 9. The Commission's findings of fact will not be disturbed on appeal when they are supported by substantial though conflicting evidence. *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979).

Misconduct is defined in *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957):

> While the term "discharged for misconduct" as used in Sec. 72–1366(f), I.C. [now I.C. § 72–1366(e)] has been variously defined, we think the term should be interpreted as meaning willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.

The *Kress* definition was reaffirmed in *Jenkins v. Agri-Lines Corporation*, 100 Idaho 549, 602 P.2d 47 (1979), and was further refined in *Matthews v. Bucyrus-Erie Co.*, 101 Idaho 657, 619 P.2d 1110, 1112 (1980) wherein this Court restated the *Kress* definition in terms of a two-pronged test:

> [T]he test for misconduct in standard-of-behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case.

■ Appellant correctly asserts that some expectations and duties "flow normally from an employment relationship." Other expectations however, do not "flow naturally." If certain practices or expectations are not common among employees in general or within a particular enterprise, and have not been communicated by the employer to the employee, they cannot serve as a proper basis for a charge of employee misconduct.

■ The second part of the *Matthews* test, that is, "whether the Employer's expectation was objectively reasonable in the particular case," is essentially a question of fact for determination by the Commission. The Commission made findings which resolve the issue of whether the discharge was for misconduct:

> [T]he evidence also established that the Claimant was discharged as a result of the Employer's fears that the Claimant would quit his job without giving them notice. The Employer had discovered that the Claimant had quit a previous job without giving the Employer notice and when the Claimant indicated that he had been absent on a particular day in order to have a job interview, the Employer was concerned that he would do the same thing to them.
>
> While the Employer's concerns are understandable, the discharge of a Claimant for those reasons does not render the Claimant ineligible for unemployment insurance benefits because discharging the Claimant for that reason is not a discharge for employment-related misconduct.
>
> While the Employer believed that the Claimant was absent from work without proper notice to the head office, the Employer did not inform the Claimant of their expectations and therefore there

was no deliberate violation of the Employer's rules.

The evidence presented in this case fails to establish that the Claimant was discharged for conduct on his behalf which constituted a wilful, intentional disregard of the Employer's interests, a deliberate violation of the Employer's rules, or a disregard of the standards of behavior which the Employer has a right to expect of its employees.

The record supports those findings.

■ In oral argument Appellant noted: "I would agree that the sole question is whether there was a deliberate violation of a known rule," (the second standard of the *Kress* definition). The Industrial Commission found, and the record establishes, that there was no violation of any rule or expectation that was the custom of this particular business, or any deviation from how "managers" in general schedule their absences, or from Miller's specific instructions to his managers.

Miller's own testimony established that he gave his managers considerable responsibility. He spent time and money to properly train his managers. The managers were responsible for numerous daily tasks performed at the station by the worker on duty. They were also responsible for scheduling shifts and handling large sums of money.

It would seem reasonable that a small business, where a manager had such responsibilities, would allow the manager to occasionally absent himself for short periods of time to attend to personal business, especially if arrangements were made for someone to cover his position. In fact, this was the practice among some of Miller's managers. If Miller had not approved of the practice he could have expressed that disapproval to his managers and informed them that such conduct was unacceptable. Not only did Miller fail to state any objection to this practice, but he acknowledged his continuing approval for the college student workers to trade shifts or cover for each other temporarily.

Regarding shift changes by managers Miller testified:

[I]t stands to reason that you wouldn't be allowed to vary from those hours *very many times. We tolerated a few variances* .... (Emphasis added.)

To prevail in a showing of misconduct it was necessary for Miller to show that either the practice of gas station managers temporarily absenting themselves without notifying the head office, by its very nature, naturally falls "below the standard of behavior expected by the employer," *Matthews, supra, or* that he had warned his managers that this practice was unacceptable and against company policy. He showed neither.

Miller asserted that Davis' behavior violated or fell below two of his expectations, both of which "flow naturally from the employment relationship." One of Miller's alleged expectations was that if Davis were to be gone from work he would let his employer know. The evidence did not support Miller's allegation.

The sole basis for Miller's claim that Davis violated an expectation or rule prohibiting him from arranging a replacement for his shift and doing so without informing the main office, thereby establishing misconduct, rested on a letter sent to Davis a few weeks before his firing. The letter outlined general changes in hours of work, and the final paragraph stated:

[U]nder the new program we will not be so tolerant of late openings, early closings, *late arrivals for shift changes,* etc. For example, in closing the station we expect it to be open until 10:00 P.M. with the driveway lights on and all paper work for closing the shift to be done after the driveway lights are turned off at 10:00 P.M. (Emphasis added.)

Miller asserted that this letter placed his managers on notice that no switching of shift would be allowed. In fact, the letter does not address the issue.

■ The second of Miller's asserted expectations was that Davis would have honestly completed the original employment

application. Admittedly, Davis did not list a prior three to four week job. The application form requested a listing of prior employment and contained a clause informing applicants that providing false information would be grounds for dismissal. Prior to firing Davis, Miller became aware that Davis had not listed a prior employer whom he had quit without notice. If Miller had dismissed Davis on that basis, he may have had a better case before the Industrial Commission. However, the record shows that Miller fired Davis solely because he feared that Davis would quit without notice. This fear stemmed from Davis quitting a prior job without giving notice and from his recent shift change in order to look for work. Miller testified:

> ... In other words, he [the claimant] just quit [his previous job] like that. And so when he started being absent a lot and then when I called him that day to see where he was the previous day and he said he had a job interview (sic). *That did it as far as we were concerned, we could not take a chance on having him quit us without notice.* (Emphasis added).

Miller apparently made a business decision to hire a new manager, train him, and replace Davis before he could quit. The record supports the Commission's finding that the firing was not the result of any misconduct by Davis.

█ This appeal has presented no meaningful issue on a question of law. Appellant has been unable to do more than dispute minor details and point to conflicts in the evidence which were factual matters properly resolved by the Commission. The appeal was brought without foundation and accordingly Davis is entitled to an award of a reasonable attorney fee on appeal.

Costs and attorney fees to respondent.

DONALDSON, C.J., and SHEPARD and BISTLINE, JJ., concur.

BAKES, Justice, concurring in the result in part and dissenting in part:

I concur in that portion of the majority opinion which affirms the Industrial Commission's finding that the employee was not discharged for misconduct and therefore was entitled to unemployment compensation.

However, I believe that the employer had an arguable point that he was entitled to dismiss the employee because of his having filed a false application in which he omitted a prior employment which he had held for only three or four weeks and which he quit without giving any notice. The employer in this case, Miller, was concerned that, having found that the employee Davis had filed a false application omitting that information, he would "quit us without notice." Accordingly, I do not believe that the appeal was brought without foundation, and no attorney fees should be awarded. If today's opinion represents how this Court now intends to apply the unreasonably and without foundation standard in determining the allowance of attorney fees on appeal, and if the rule is going to be applied even-handedly against claimants as well as for them, then we are apt to see a substantial increase in the number of attorney fees awards against claimants in the near future, and the claimants bar should be put on notice.

## ON DENIAL OF PETITION FOR REHEARING

HUNTLEY, Justice.

The Petition for Rehearing seeking reconsideration of the award of attorney fees is supported by an affidavit of counsel reading in part as follows:

> 2. I am counsel for the Appellant in the above matter. In this opinion on page 1595 I am incorrectly quoted as having stated the following:
>
> > I would agree that the sole question is whether there was a deliberate violation of a known rule.

This quotation is a clear misstatement of the record. I have reviewed a copy of the tape of my oral argument from the Court. The actual statement made was:

I would agree *if* the sole question is whether there was a deliberate violation of a known rule.

Counsel is correct that we inadvertently substituted the word "that" for "if". Nevertheless the Court remains of the opinion that the appeal presented no meaningful issue on a question of law, that it was brought without foundation, and that the award of attorney fees to the respondent was proper.

Rehearing denied.

DONALDSON, C.J., and SHEPARD and BISTLINE, JJ., concur.

BAKES, Justice:

The appellant employer's petition for rehearing clearly points out why this Court should either grant a rehearing in this matter or modify its opinion to eliminate the award of attorney fees on appeal.

In its original opinion issued in this matter the majority stated that "if Miller had dismissed Davis [on the basis that Davis had filed a false application by omitting a prior job], he may have had a better case before the Industrial Commission. However, the record shows that Miller fired Davis solely because he feared that Davis would quit without notice." The majority opinion supported that conclusion by misquoting appellant's oral argument. The majority's misquote stated, "In oral argument appellant noted, 'I would agree that the sole question is whether there was a deliberate violation of a known rule....'" What the appellant actually stated in oral argument was, "I would agree *if* the sole question is whether there was a deliberate violation of a known rule...." However, appellant's argument then went on to point out that there was another issue based upon the false application which the employee Davis admittedly filed. That was appellant's main argument, and as recently as the case of *Brown v. Iowa Beef Processors*, 107 Idaho 558, 691 P.2d 1173 (1984), we have consistently held that the filing of a false application is grounds for discharge for cause.

The majority of the Court should be commended for apologizing to the appellant employer for misquoting his counsel and substituting the word "that" for the word "if." However, by calling the misquote to the Court's attention in his petition for rehearing, appellant was not merely looking for an apology—he was trying to point out that the Court still did not understand his main contention that he was justified in dismissing Davis because of his filing of a false application, in addition to his other contention that Davis had committed a deliberate violation of a known rule. Even after apologizing, the majority still apparently does not understand the point which Miller is attempting to make, and that is that Davis had filed a false application, omitting his prior employment which he had quit without giving any notice to the employer. When appellant Miller discovered this, and also discovered that the employee Davis was out interviewing other employers, he was concerned that Davis would do the same to him, and he testified that he found a replacement and terminated Davis for filing the false application. The Industrial Commission nevertheless found as a fact that the employer's discharge of the employee was not for misconduct, and awarded the employee his unemployment compensation.

I continue to concur in this Court's decision to affirm the Industrial Commission. However, even though the appellant employer lost on that issue before the Industrial Commission, this appeal, in which the employer argued that the admittedly false application which the employee filed was grounds for discharge without incurring liability for unemployment compensation, was not pursued frivolously or without foundation, *compare Brown v. Iowa Beef Processors*, *supra*, and I would either grant a rehearing on the issue of attorney fees or would modify our prior opinion to eliminate the award of attorney fees.