880 P.2d 252

Wade A. CAMPBELL, Claimant–Respondent,

v.

**BONNEVILLE COUNTY BOARD OF COMMISSIONERS, Employer, Defendant–Appellant,**

and

**State of Idaho, Department of Employment, Defendant.**

No. 20494.

Supreme Court of Idaho, Eastern Idaho, May 1994 Term.

Aug. 29, 1994.

---

Anderson, Pike & Bush, Idaho Falls, for defendant-appellant. Scott R. Hall, argued.

William B. Latta, Jr., Boise, for claimant-respondent.

REINHARDT, Justice Pro Tem.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Defendant–Appellant, Bonneville County Board of Commissioners (Bonneville County), appeals from a decision of the Idaho Industrial Commission (the Commission) awarding unemployment benefits to Claimant–Respondent, Wade A. Campbell (Campbell).

Campbell began working for Bonneville County as a laborer in 1966. After two promotions, he served in the position of Road Supervisor from 1978 through June 24, 1991. After approximately twenty-five years of service to the county, he was fired. The basis stated for Campbell's discharge was an incident in May of 1991 in which Campbell, as Road Supervisor, directed a crew of county employees working on a road reconstruction project to take a section of old concrete pipe to his personal residence.

The concrete pipe was removed from beneath the roadway under reconstruction when Campbell, as supervisor, made the decision to replace it with a newer style of pipe because additional sections necessary to make an extension were not available for the old pipe. Campbell's decision was approved by the county engineer.

Campbell testified that he originally intended to remove the concrete pipe to a gravel pit for storage, but later directed county workers to take the pipe to his personal residence. Because it could not be sealed, the salvaged pipe could no longer be used under a roadbed or on the shoulder without damaging the road surface. Campbell stated he had no use for the pipe and

that he was not sure why he directed that it be taken to his property to be stored with other unused concrete pipe material that had been given to him several years before by a road supervisor. The county had never sold this type of salvaged concrete pipe material at auction. The board of county commissioners never placed a value (if it had value) on the salvaged section of pipe at issue either before or after discharging Campbell.

On several occasions before this particular episode, county salvage materials had been given to employees for personal use. When employees were given salvage materials they had used county vehicles to transport the salvage materials to the shop before transferring the materials to their private vehicles. The Bonneville County Personnel Manual did not have any specific rules defining what constituted salvage material or when employees could take salvage materials. The manual did provide for dismissal upon any violation of state statute, county law, departmental rules or regulations, or county rules or regulations. The manual also provided for dismissal of any employee for unlawful conversion of county property.

After his dismissal, Campbell filed for, and was granted, unemployment benefits by the Department of Employment (the D.O.E.). Bonneville County filed a protest of the award and a hearing was held before the Appeals Bureau. The Appeals Examiner reversed the decision of the D.O.E., concluding that Campbell was ineligible for benefits because he had been discharged for misconduct.

On the basis of the factual findings of the Appeals Examiner, as amended by the Commission, the Commission determined that Bonneville County had not carried its burden of establishing that Campbell had been dismissed for misconduct and reversed the decision of the Appeals Examiner. Bonneville County appealed to this Court.

## II.

## ANALYSIS

### A. There Is Proper Jurisdiction On Appeal

■ Campbell argues that because the D.O.E. was not served with notice of this appeal, this Court is without jurisdiction. He bases his position on Idaho Appellate Rule 20 which requires that "[a]t the time of filing of a notice of appeal or cross-appeal, the appellant or cross-appellant shall serve copies thereof upon all persons who were parties and who appeared in the proceedings below, whether or not they are parties to the appeal." Campbell maintains that the D.O.E. was a statutory party to the appeal from the Appeals Examiner to the Commission pursuant to I.C. § 72–1368(f) which incorporates the definition of an "interested party" set forth in I.C. § 72–1323 as including "the Director [of the Department of Employment] or a duly authorized representative."

Campbell maintains that the previous decisions of this Court hold that failure to give notice of appeal as required to all parties is a fatal jurisdictional defect always mandating dismissal of the entire appeal. A review of the relevant precedents demonstrates that this is an excessively broad interpretation.

In *Finlayson v. Humphreys*, 67 Idaho 193, 174 P.2d 210 (1946), this Court held that the failure to comply with the statute then in effect, I.C. § 11–202, which at that time required that notice of appeal be served upon each "adverse" party, mandated dismissal for lack of jurisdiction. In *Finlayson*, the appellant had properly served the most directly adverse party, but had failed to serve notice of appeal upon a party to the proceeding below who might "under certain contingencies" have been affected by the outcome of the appeal. *Finlayson*, 67 Idaho at 195, 174 P.2d at 211.

The decision of this Court in *Helgeson v. Powell*, 54 Idaho 667, 34 P.2d 957 (1934), is also instructive. In *Helgeson*, one of the respondents obtained dismissal because the notice of appeal that was served to that party incorrectly specified the adverse judgment from which appeal was taken. *Id.* at 673, 34 P.2d 959. The Court dismissed only that party and proceeded to decide the matter on the merits with regard to the properly served remaining parties, implicitly concluding that the remaining parties to the appeal

could not be affected by the absence of the dismissed party.

In *Mortimer v. Riviera Apartments,* 122 Idaho 839, 840 P.2d 383 (1992), this Court cited both *Finlayson* and *Helgeson* with approval and stated that this "Court is without jurisdiction to act on those matters which affect the unserved parties." *Id.* at 846, 840 P.2d at 390. The Court in *Mortimer* pointed out that the unserved party had "a direct interest in the outcome of the appeal" which could cause the unserved party "potentially significant financial consequences." *Id.* Read together, these three cases demonstrate that the essential question before the Court in this case is whether or not the D.O.E. would be adversely affected by this Court's ruling on the merits of the appeal from the Commission's decision.

Campbell does not explain how the D.O.E. could be adversely affected by resolution of this appeal. We believe the D.O.E. does not have an interest in the outcome such that its presence is essential to our consideration of the issues. Therefore, we hold, based on the issues presented in this case, that jurisdiction of Bonneville County's appeal is proper irrespective of whether the D.O.E. was provided notice.

### B. The Commission's Decision Is Supported By Substantial And Competent Evidence

■ This Court only reviews questions of law in an appeal from a decision of the Commission, disturbing findings of fact on appeal only where they are not supported by substantial and competent evidence. *Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 1094, 695 P.2d 1231, 1233 (1984).

This Court has articulated a test for three types of conduct to determine whether an employee is ineligible for unemployment benefits due to a discharge based on "misconduct" as used in I.C. § 72–1366(e) by defining misconduct as "willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Puckett v. Idaho Dept. of Corrections,* 107 Idaho 1022, 1023, 695 P.2d 407, 408 (1985) (quotations omitted).

■ We have further subdivided the test for the third type of conduct by bifurcating the test for "standards of behavior" misconduct into an evaluation of "(1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case." *Id.* at 1023–24, 695 P.2d at 408–09. The tests for the first two types of misconduct are clearly factual determinations. We have previously said that the third test is also a question of fact. *Puckett,* 107 Idaho at 1024, 695 P.2d at 409.

■ As to the first test, the Commission indicated that whether or not Campbell had intentionally[1] disregarded Bonneville County's interest was a close question. However, due to Bonneville County's inability to as-

---

1. The Commission at one point misdescribed this inquiry as whether Campbell "substantially" or intentionally disregarded the county's interest.

In *Mandes v. Employment Security Agency,* 74 Idaho 23, 225 P.2d 1049 (1953), this Court described the definition of misconduct for unemployment benefit purposes set forth in 48 Am.Jur. § 38 which included "negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." However, three years later, in *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 548, 307 P.2d 217, 219 (1957), the Court acknowledged that misconduct had been "variously defined" in the past and adopted the narrower, three tests for misconduct referenced above. The Court has continuously reaffirmed the three tests for mis-

conduct from *Johns* without again mentioning "negligence" or "substantial disregard" of an employer's interest, *see Davis,* 107 Idaho at 1094, 695 P.2d at 1233; *Jenkins v. Agri–Lines Corp.,* 100 Idaho 549, 602 P.2d 47 (1979), even where further refining the third test for misconduct into a two-part analysis in *Mathews v. Bucyrus–Erie Co.,* 101 Idaho 657, 659, 619 P.2d 1110, 1112 (1980).

As mentioned, the Commission in this case did employ the broader language of *Mandes.* However, later in its decision the Commission appeared to use the correct standard. Moreover, it would have been easier for Bonneville County to establish negligence and the Commission concluded that Bonneville County had not even met that lower standard. Therefore, the error, if any, was harmless.

cribe any value whatsoever to the concrete pipe which the county admitted was obsolete and unusable for road construction; the "controverted" evidence regarding whether the pipe had been offered to the landowner who had granted a right of way for the construction, the fact that no concrete pipe had been auctioned by the county in the past; and evidence that the county had condoned the use of county vehicles for transporting salvage goods back to the shop for loading into personal vehicles, the Commission concluded that Campbell had not intentionally disregarded Bonneville County's interest either with respect to the salvaged pipe or in relation to the personal use of a county vehicle.

Bonneville County argues that the Commission's conclusion is unsupported by substantial evidence because the pipe did have value to the county. The county argues that this value was established and unrefuted by the evidence that Campbell had been told that the pipe was to be stored for future non-roadway uses. Our review of the county's citations to the record discloses that there is no support for that assertion. To the contrary, it appears that the decision of how to dispose of the material was Campbell's to make. In fact, there is no dispute that Campbell had the authority and discretion as supervisor to order that the pipe be crushed and buried on the job site.

The county argues that it was error for the Commission to find that the concrete pipe had no value as salvage. The Commission's conclusion appears amply supported in light of the numerous instances in the record of the county allowing employees and members of the public to take salvage material, the lack of specific rules regarding employees taking salvage materials, as well as the evidence that Campbell had received salvage material with the permission of a person who had previously held the supervisory position from which Campbell was discharged.

By affirming this conclusion of the Commission we do not suggest that, for purposes of misconduct sufficient to deny unemployment benefits, employees may freely designate as "salvage" whatever items of property belonging to an employer they desire. Unlike the pipe at issue in this case, many types of property have inherent value. Other types of property may have value that is not immediately obvious, but which is established through an employer consistently ascribing value to the property and communicating that to employees. Under the unique circumstances of this case, we view Campbell's appropriation of the pipe as indistinguishable from that of an employee who fishes a piece of scrap paper from the wastebasket for his personal use.

As to the second test, the Commission also held that Campbell had not deliberately violated a county rule. The Commission decided that despite the facial applicability of the personnel manual's prohibition of conversion, the county's practice of condoning employee recovery of salvage materials created an atmosphere in which it could not be said that Campbell had deliberately violated a county rule because the rule had not been consistently administered.

As to the third test, the Commission concluded that the county's past practices had given rise to a "contradictory standard" that undermined its ability to assert that Campbell's conduct fell below an expected "standard of behavior." On the second component of the third test, the Commission held that this past practice and failure to communicate the expectation made it objectively unreasonable under the circumstances. We agree with both of these conclusions.

In *Alder v. Mountain States Telephone & Telegraph,* 92 Idaho 506, 446 P.2d 628 (1968), we recognized that whether an employer had condoned employee conduct that was in contravention of company rules was a relevant factor in reviewing a denial of unemployment compensation benefits. Similarly, in *Hutchinson v. J.R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977), we affirmed the denial of unemployment compensation benefits where the employee had used company phones and typewriters for personal matters during business hours and there was no evidence that the company had ever knowingly tolerated such conduct in the past.

The Commission's conclusion that Campbell did not disregard the county's standards of behavior, like those supporting the other

two tests for misconduct discussed above, is supported by substantial and competent evidence. The decision of the Commission is thus affirmed.

## C. Campbell Is Not Entitled To Attorney Fees On Appeal

Although we hold that the Commission's decision was supported by substantial and competent evidence, we decline to award attorney fees on appeal because Bonneville County raised "meaningful issue[s] on a question of law." *Davis*, 107 Idaho at 1096, 695 P.2d at 1235.

### III.

### CONCLUSION

The Commission's decision is affirmed. Costs, but not attorney fees, to Campbell.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.