896 P.2d 979

Nancy B. WULFF, SSN: 307–62–8786, Claimant–Respondent,

v.

SUN VALLEY COMPANY, Employer, Defendant–Appellant,

and

State of Idaho, Department of Employment, Defendant–Respondent.

No. 21085.

Supreme Court of Idaho, Boise, March 1995 Term.

June 19, 1995.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant. Grant T. Burgoyne, argued.

Alan G. Lance, Atty. Gen., Jane M. Newby, Deputy Atty. Gen., argued, Boise, for respondent.

SCHROEDER, Justice.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

This is an appeal by the Sun Valley Company (Sun Valley) from a decision of the

Industrial Commission (the Commission) holding that Sun Valley did not carry its burden of establishing that its former employee, Nancy B. Wulff (Wulff), was discharged for misconduct such that she was ineligible for unemployment benefits. The Department of Employment (the DOE) appears as respondent.

Wulff worked as a cashier and skate shop manager for Sun Valley from December of 1989 until January 2, 1993. She was terminated by her supervisor, Nick Maricich, the director of skating. The written notice of termination issued to Wulff listed the following grounds:

1. Nancy has exhibited an inability to communicate in a positive manner with her managers.

2. It has been brought to my attention that she has spoken negatively of the management and Sun Valley Co. to other members of the staff as well as some of our clients.

3. She has shown an overall negative attitude toward her managers and co-workers.

4. She is unwilling to be flexible regarding her scheduled work hours, and expects her manager to schedule the staff according to her personal needs.

5. She continues to bring her children to work despite several warnings.

6. Due to her negativity and inability to communicate with management so as to resolve conflicts in a positive and constructive manner, she is unsuitable to the working environment here, and does not contribute to the overall success of the Sun Valley Skating Center.

Wulff applied for unemployment benefits and was ruled eligible for benefits in an eligibility determination. Sun Valley appealed for a redetermination and the decision was affirmed in an eligibility redetermination. Sun Valley then appealed to the Appeals Bureau. An Appeals Examiner took testimony in telephonic hearings and reversed the eligibility determination, concluding that Wulff was ineligible for unemployment benefits because she had been discharged for misconduct.

In making the determination of misconduct the Appeals Examiner considered a number of allegations by the employer, including claims that Wulff had a negative attitude towards her employer and her immediate supervisor, that she created problems in requesting time off and complaining about her work schedule, and that she allowed her children in the work place after being warned not to do so. The Appeals Examiner determined "that the employer has established that the claimant was discharged for an accumulation of problems which included the claimant allowing her children to stay in the ice skating shop when the claimant did not have appropriate child care arrangements, repeatedly and constantly requesting time off from work and complaining about the work schedule and for a general bad attitude towards the work place." The Appeals Examiner concluded that the accumulation of problems established that Wulff was unwilling to work under the rules established by her employer and was unwilling to work up to the standards established by her employer. The Commission reviewed the record of the hearings before the Appeals Examiner and entered revised findings which deleted some findings of the Appeals Examiner and restated others. The Commission determined that the claims of Sun Valley were "general averments" to which Wulff had given "veritable explanations." The Commission reversed the decision of the Appeals Examiner on the basis of the revised findings of fact, concluding that Sun Valley had not met its burden of establishing misconduct by a preponderance of the evidence because Sun Valley's "general averments" did not outweigh Wulff's "veritable explanations." Sun Valley appeals the Commission's decision.

## II.

### STANDARD OF REVIEW AND THE TEST FOR MISCONDUCT

█ The standard for reviewing a determination of the Commission in an unemployment case and the underlying definition of misconduct that governs whether a discharged employee is eligible for unemployment benefits is set forth in *Campbell v.*

*Bonneville County Bd. of Commr's,* 126 Idaho 222, 225, 880 P.2d 252, 255 (1994):

This Court only reviews questions of law in an appeal from a decision of the Commission, disturbing findings of fact on appeal only where they are not supported by substantial and competent evidence. *Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 1094, 695 P.2d 1231, 1233 (1984).

This Court has articulated a test for three types of conduct to determine whether an employee is ineligible for unemployment benefits due to a discharge based on "misconduct" as used in I.C. § 72–1366(e) by defining misconduct as "willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Puckett v. Idaho Dep't of Corrections,* 107 Idaho 1022, 1023, 695 P.2d 407, 408 (1985) (quotations omitted).

We have further subdivided the test for the third type of conduct by bifurcating the test for "standards of behavior" misconduct into an evaluation of "(1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case." *Id.* at 1023–24, 695 P.2d at 408–09. The tests for the first two types of misconduct are clearly factual determinations. We have previously said that the third test is also a question of fact. *Puckett,* 107 Idaho at 1024, 695 P.2d at 409.

■ In unemployment cases the findings of the Industrial Commission will be upheld on appeal when sustained by substantial and competent, though conflicting evidence. *Lang v. Ustick Dental Office, P.A.,* 120 Idaho 545, 547, 817 P.2d 1069, 1071 (1991). This standard has been further defined in workers' compensation decisions: "Substantial and competent evidence consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Reiher v. American Fine Foods,* 126 Idaho 58, 60, 878 P.2d 757, 759 (1994). "Moreover, we refuse to disturb on

appeal the Commission's conclusions as to the weight and credibility of the evidence unless they are clearly erroneous." *Id.* at 61, 878 P.2d at 760.

## III.

## SUFFICIENCY OF THE COMMISSION'S FINDINGS

■ Sun Valley argues that the Commission did not fulfill its statutory obligation under I.C. § 72–716 to make adequate findings of fact. This Court has remanded unemployment cases to the Commission in the past for inadequate findings. *See Comegys v. Idaho Air Nat'l Guard,* 104 Idaho 767, 663 P.2d 648 (1983); *Nenoff v. Culligan Soft Water,* 95 Idaho 834, 521 P.2d 658 (1974), *appeal after remand,* 97 Idaho 243, 542 P.2d 837 (1975).

In *Nenoff,* the Court outlined the type of findings that are adequate:

In reviewing appeals from the Industrial Commission, this Court is limited by constitution, statute, and decision, to a review of questions of law. It is impossible, however, to fairly evaluate a conclusion of law of the Industrial Commission without knowing the facts upon which the Commission based its conclusion. The Commission has a duty to make findings of fact. I.C. 72–716; *Swan v. Williamson,* 74 Idaho 32, 257 P.2d 552 (1953); *Patrick v. Smith Baking Co.,* 64 Idaho 190, 129 P.2d 651 (1942); *In re MacKenzie,* 54 Idaho 481, 33 P.2d 113 (1934). Such findings must be definite, certain and specific, and there should be no room for misunderstanding as to whether statements are intended to be findings. *Swan v. Williamson, supra.*

In this case the Commission did not resolve the factual conflicts in the evidence. The findings of fact entered by the Commission are merely a recitation of the allegations, contentions and testimony of the parties. Such findings of fact do not permit this Court to obtain a clear understanding of the basis of the decision of the Commission and are contrary to this

Court's instructions in *Swan v. Williamson, supra,* wherein we stated:

"Where there is a conflict in the testimony the duty rests upon the board, a fact finding body, to resolve such conflict, to determine what is true and what is false and to announce the facts in accordance with its findings. Statements, observations, recitals and excerpts from the testimony of witnesses, argumentative comment thereon, statements of the method of reasoning by which a conclusion is reached, that the claimant has or has not established certain facts by a preponderance of the evidence, as well as statements as to sustaining or failing to sustain the burden of proof are not proper; neither are they required by nor sufficient to satisfy the express statutory duty requiring specific, certain and reasonably concise findings of fact." 74 Idaho at 37, 257 P.2d at 554.

Therefore the matter is remanded to the Industrial Commission with directions to enter findings of fact, conclusions of law and a new order conforming with those findings and conclusions.

*Nenoff,* 95 Idaho at 836–37, 521 P.2d at 660–61 (footnotes omitted). The findings in *Nenoff* did not contain any statement by the Commission weighing the conflicting testimony. *See Nenoff,* 95 Idaho at 836 n. 4, 521 P.2d at 660 n. 4. Sun Valley maintains that this case has the same flaw that existed in *Nenoff,* arguing that the Commission's findings constitute merely a recitation of what the opposing witnesses said. However, a close reading of the Commission's recitations indicates that it did make sufficient findings to allow review by this Court. The Commission described Sun Valley's evidence as "general averments." In contrast, the Commission termed Wulff's evidence as "veritable explanations," which is a way of saying that her explanations were believable. In light of the conclusion reached by the Commission, it follows that the Commission in fact believed and accepted Wulff's testimony. In the face of believable explanations by Wulff, Sun Valley's evidence did not prove misconduct warranting denial of benefits, according to the Commission. The Commission could have been far more specific about finding the facts, but when read in the context of the Commission's rulings the findings are adequate to conduct a proper review.

## IV.

## THERE WAS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S DECISION

■ Sun Valley alleges that Wulff was discharged for misconduct as measured both by a "standards of behavior" theory as well as under a "deliberate disregard of an employer's rule" theory. The "deliberate disregard of an employer's rule" theory requires a finding that the employee acted deliberately, violating a known rule. Misconduct for disregarding the employer's objectively reasonable "standards of behavior" is based upon the idea that:

some expectations and duties "flow normally from an employment relationship." Other expectations however, do not "flow naturally." If certain practices or expectations are not common among employees in general or within a particular enterprise, and have not been communicated by the employer to the employee, they cannot serve as a proper basis for a charge of employee misconduct.

*Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 1094, 695 P.2d 1231, 1233 (1984). In measuring the sufficiency of the Commission's findings, it is necessary to determine if Sun Valley proved (1) a deliberate violation of a known rule or (2) a breach of a standard of behavior that would flow normally from an employment relationship or which was communicated to Wulff because of its uncommon nature.

■ "Idaho case law discloses no requirement that there be a precipitating act of misconduct immediately prior to the termination of employment before a claimant may be denied unemployment benefits for employment-related misconduct." *Roll v. City of Middleton,* 105 Idaho 22, 26, 665 P.2d 721, 725 (1983). Sun Valley's allegations of misconduct must be analyzed individually and as a whole to determine whether the Commission's decision that Wulff's actions did not

amount to misconduct, either as deliberate violation of a rule or breach of a standard of behavior, is supported by substantial and competent evidence.

■ Sun Valley maintains that the evidence established Wulff was inflexible in shift scheduling. The Commission found that Sun Valley "acknowledged that there were no instances in which Claimant either refused or failed to work when scheduled."

There is substantial and competent evidence in the record supporting the Commission's decision that Wulff's inflexibility did not amount to misconduct because she never failed or refused to work. There is evidence that accommodating Wulff's scheduling requests was at times an extreme inconvenience, but the evidence shows that Sun Valley did accommodate those requests nonetheless and that Wulff did in fact work. Absent a showing of a refusal to work, the Commission's conclusion that Sun Valley did not prove misconduct in this regard is upheld.

■ Sun Valley asserts that the evidence established that Wulff engaged in misconduct by making negative comments about Sun Valley in general and about the management of the skate shop in particular. Wulff's supervisor heard "through the grapevine" that she had questioned his competence and that of his assistant. The Commission could properly disregard this hearsay.

Wulff's supervisor testified that he had received four complaints from Wulff's co-workers concerning her "negative comments towards her coworkers [sic] and the place of employment" as well as a single guest complaint that Wulff had been "rude" to some "hockey kids." None of these incidents had been documented. Mildred Taylor, an employee, also testified that other unspecified employees had told her that Wulff had said Taylor was incompetent. The most specific non-hearsay derogatory remarks attributed to Wulff are statements to her supervisor that Sun Valley did not "treat their employees well" and another to the effect that she did not "want to be at work."

The Commission rejected Sun Valley's evidence and chose to accept as "veritable" Wulff's denial of these allegations. Wulff denied calling Maricich "incompetent" and denied saying that she did not want to be at work. There is no testimony in the record by Wulff refuting Taylor's hearsay account of Wulff calling Taylor "incompetent." However, the Commission could disregard this hearsay. The Commission characterized Taylor's and Maricich's testimony as "general averments" which were insufficient to establish misconduct. That determination will not be overturned.

■ A third ground upon which Sun Valley attempted to establish misconduct was Wulff's alleged communication deficiencies, specifically her habit of leaving scheduling requests in the form of a written note rather than asking Taylor or Maricich verbally. The Commission offset Sun Valley's complaint about Wulff's notes with her explanation that she frequently worked evenings, and that this had been an accepted practice with her previous supervisor. Although not explicitly stated, inherent in the Commission's ruling is a determination that the prohibition of note writing for schedule requests in the Sun Valley skate shop was not an expectation that was objectively reasonable in the particular case or a determination that there was no deliberate violation given the circumstances and practices of the previous management. The conclusion of the Commission is supported by substantial and competent evidence in the record for two reasons. First, the prohibition on note-writing is not the type of rule that flows naturally from the employment relationship without the need for communication. There is no evidence in the record that Maricich or Taylor specifically told Wulff that the manner in which she was making requests was forbidden. Absent specific notice that the practice of writing notes was forbidden, Sun Valley's "past practices had given rise to a 'contradictory standard' that undermined its ability to assert that [the claimant's] conduct fell below an expected 'standard of behavior.'" *Campbell v. Bonneville County Bd. of Commr's*, 126 Idaho at 226, 880 P.2d at 256.

■ The final basis for Sun Valley's claim of misconduct is the charge that Wulff allowed her children into the skate shop while she was working after having been explicitly forbidden to do so. Maricich warned Wulff

in April of 1992 that "bringing her children to work with her was unacceptable." Subsequently, there was an incident on July 6, 1992, where Wulff's "son was in the shop on and off all day." This resulted in a written warning. The Commission did not address this incident specifically. However, Sun Valley did not discharge Wulff for this incident. Rather, Sun Valley warned her. The remaining allegations regarding the children being impermissibly present at the skating area were defended by Wulff on the grounds that they were present for the figure skating program. The Commission accepted this explanation. The single incident identified by Sun Valley involving a possible interference with Wulff's responsibilities caused by her children attending the skate program is an occasion where Wulff locked the register and helped her son search for a missing Swiss Army knife. The Commission sided with Wulff's assertion that this did not interfere with her work because she often had to leave the register for work-related responsibilities. In light of the fact that the children had a permissible reason to be on the premises independent of their mother's position at Sun Valley, and because Sun Valley did not show that Wulff abrogated her responsibilities while they were there, the Commission's resolution cannot be characterized as clearly erroneous.

The evidence is sufficient to sustain the Commission's conclusion that the various acts of Wulff individually, or taken together, do not constitute misconduct.

## V.

### CONCLUSION

The Court concludes that the Commission's findings are adequate to permit appellate review. The Commission's findings are supported by substantial and competent evidence. The decision of the Commission is affirmed. Costs on appeal are awarded to the respondent, Wulff.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.