602 P.2d 69

**Robert S. BENTLEY and Ray E. Craker, Claimants-Appellants,**

v.

**BUNKER HILL COMPANY, Employer,**

**and**

**Department of Employment, Defendants-Respondents.**

No. 12844.

Supreme Court of Idaho.

Nov. 1, 1979.

Joseph M. Skillens and Alan Wasserman, Idaho Legal Aid Services, Inc., Coeur de'Alene, for claimants-appellants.

Robert E. Brown of Brown, Peacock, Keane & Boyd, Kellogg, for defendant-respondent Bunker Hill Co.

Roger B. Madsen, Deputy Atty. Gen., Boise, for defendant-respondent Dept. of Employment.

Before DONALDSON, C. J., BAKES, McFADDEN and BISTLINE, JJ., and SCOGGIN, J. Pro Tem.

PER CURIAM:

Appellants Bentley and Craker appeal from an adverse decision of the Industrial

Commission denying them unemployment benefits on the basis of the labor dispute disqualification of I.C. § 72–1366(h).[1]

Appellants are carpenters employed by the Bunker Hill Company. They are members of the carpenters union local. This carpenters union is a member of the Metal Trades Council, a group consisting of five craft unions all of whose members are employed at Bunker Hill. The Metal Trades Council was formed in 1964 by the five craft unions for the purpose of joint bargaining and negotiating with the Bunker Hill Company. The contracts of the five craft unions comprising the Metal Trades Council were scheduled to expire at midnight of May 9, 1977.

For a period prior to May 9, representatives of the Metal Trades Council, including representatives of the carpenters union, were negotiating with representatives of Bunker Hill in an effort to arrive at a new contract. These negotiations were unsuccessful and members of the craft unions which made up the council voted to strike upon expiration of the contract. Members of the carpenters union, however, including the claimants, were unable to vote concerning the strike because the carpenters union had failed to give timely notice to federal mediation agencies of the impending expiration of the contract.[2] Nonetheless, the carpenters union was represented at and participated in the negotiations with Bunker Hill, both before and after May 9.

Members of the Metal Trades Council commenced a strike at midnight May 9. The claimants did not participate in picketing and claim that neither they nor the carpenters union participated in the strike. At no time after the commencement of the strike did the claimants report for work. Nor did they contact Bunker Hill to determine whether work was available or their services desired.

After the contracts of the five union members of the Metal Trades Council expired at midnight, May 9, negotiations continued regarding contracts for all such member unions, including the carpenters union. Representatives of the carpenters union continued to participate in the negotiations.

On August 10, 1977, representatives of Bunker Hill and the Metal Trades Council reached a tentative settlement agreement. Such agreement was subsequently ratified on August 20 by four of the five craft unions, including members of the carpenters union. Bunker Hill thereafter entered into separate contracts with the craft unions. Claimants as members of the carpenters union were recipients of wage increases and other benefits negotiated in the new contract.

The Industrial Commission found, among other things, that the appellants were unemployed as a result of a labor dispute within the meaning of I.C. § 72–1366(h). This finding is supported by substantial and competent evidence and will not be reversed on appeal. See, e. g., Simmons v. Department of Employment, 99 Idaho 290, 581 P.2d 336 (1978). The Industrial Commission also found that appellants, as members of the carpenters local and the Metal Trades Council, belonged to a grade

---

1. "72–1366. PERSONAL ELIGIBILITY CONDITIONS. . . .

. . . . .

"(h) A benefit claimant shall not be eligible to receive benefits for any week with respect to which it is found that his unemployment is due to a labor dispute; provided, that this subsection shall not apply if it is shown that—

"(1) He is not participating, financing, aiding, abetting, or directly interested in the labor dispute; and

"(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which

the labor dispute occurs, any of whom are participating in or directly interested in the dispute.

. . . . ."

2. Bunker Hill disputes appellants' assertion that the carpenters were both unable to and did not participate in the strike vote. It points out that the five unions comprising the council had an aggregate membership of 180 and that 35 to 40 of the 180 members were members of the carpenters local. Since 155 union members voted, Bunker Hill reasons, some of them must have been carpenters.

or class of workers of which there were members participating in and directly interested in the labor dispute in question, thus rendering the appellants ineligible for unemployment benefits. I.C. § 72–1366(h)(2). Because we affirm the Commission's decision on the above ground, it is unnecessary to consider appellants' attack on the Commission's alternative and independent bases for denying unemployment benefits.[3]

The phrase "grade or class" was clearly intended to include more than the group of employees directly interested or actually participating in the labor dispute. To impose such a restrictive interpretation would render I.C. § 72–1366(h)(2) mere surplusage. The record discloses that the Metal Trades Council represented all the craft employees and these employees voluntarily banded together and made the council their bargaining agent. The Commission was justified in concluding that such an arrangement for the purposes of this statute required that the council be treated as a single grade or class. The members of the council, with the exception of the carpenters, overwhelmingly voted to strike and subsequently participated in the strike which resulted in the work stoppage. The Commission did not err in concluding that all of the members of the craft unions constituted a single class, seeking by common bargaining to improve wage rates and other benefits in such a way to benefit the membership of each and all of the included craft unions.

The decision of the Industrial Commission is supported by the record and is hereby affirmed.

---

3. For example, in view of our disposition of this case, it is unnecessary to determine whether appellants actually participated in the strike. Similarly, we need not address appellants' contention that they were merely following their employer's instructions during the craft unions' strike and the steelworkers' strike which had previously commenced on May 6, 1977. Appellants maintained that representatives of the company had directed them to report to work and sign a list indicating that they had reported to work before returning to their homes. The company disputed this. Appellants apparently reported and signed up on the mornings of Friday, May 6, Monday, May 9 and Tuesday, May 10, before they were told by an unidentified individual that they need not return to sign up any longer.