686 P.2d 64
**Belinda D. HARRELSON,**
Claimant-Appellant,

v.

**PINE CREST PSYCHIATRIC CENTER,**
Employer, Defendant-Respondent,

and

**State of Idaho, Department of Employment, Respondent.**

No. 14839.

Supreme Court of Idaho.

July 24, 1984.

David Allen Manko, Coeur d'Alene, for claimant-appellant.

Samuel Eismann, Coeur d'Alene, for defendant-respondent.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Larry F. Weeks, Deputy Atty. Gen., Boise, for respondent.

McFADDEN, Justice Pro Tem.

This is an appeal from an order of the Industrial Commission, adopting the findings and decision of the appeals examiner of the Department of Employment, which decision held claimant to be ineligible for unemployment compensation. We affirm.

The Industrial Commission's denial of claimant's request for benefits was based on I.C. § 72–1366(e), which states in pertinent part:

"The personal eligibility conditions of a benefit claimant are that—

\* \* \* \* \* \*

"(e) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he

was discharged for misconduct in connection with his employment."

This Court, in *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957), placed the following explanatory gloss on the term "misconduct" in the above-quoted statute:

> "While the term 'discharged for misconduct' as used in Sec. 72–1366(f) [now (e) ], I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees."

Claimant Harrelson worked as a recreational therapist for respondent Pine Crest Psychiatric Center from February 9, 1982 to May 20, 1982. In that capacity, she was responsible to organize and conduct group therapy sessions, attend staff meetings and in-house training sessions, comply with respondent's methodology of psychiatric care, and report regularly to her supervisor as to her scheduling and progress.

This is essentially an appeal challenging the factual determination of the Department of Employment appeals examiner. The evidence, though disputed, could be reasonably construed to show that claimant displayed a negative, belligerent, and childish attitude; did not satisfactorily demonstrate or use the skills which were required for her job; did not endeavor to improve; and did not meet the criteria defined by respondent for the position which she held. Furthermore, the record supports the respondent's contention that claimant was consistently late to staff meetings, without excuse and despite repeated warnings; and that she refused to follow respondent's philosophy of patient care.

Claimant was discharged from employment following her failure to pass her probationary period. She applied for unemployment compensation, and her claim for benefits was contested by her employer. A hearing was held before a Department of Employment hearing examiner, who found

that claimant was ineligible for benefits because she had been terminated for work-related misconduct. The Industrial Commission, after reviewing the record, adopted the examiner's findings and denied claimant's request for benefits.

Our review of Industrial Commission decisions is limited to issues of law, and we will not overturn the commission's factual findings where they are supported by substantial and competent evidence. *Cornwell v. Kootenai County Sheriff*, 106 Idaho 823, 683 P.2d 859 (1984); *Parker v. St. Maries Plywood*, 101 Idaho 415, 614 P.2d 955 (1980); *Bentley v. Bunker Hill Co.*, 100 Idaho 571, 602 P.2d 69 (1979). *See* Idaho Const. art. 5, § 9. We do not find that the commission erred in this regard.

The decision of the Industrial Commission is affirmed. Costs to respondents. No attorney's fees on appeal.

DONALDSON, C.J., and BAKES, J., concur.

BISTLINE, Justice, dissenting, with whom HUNTLEY, Justice, concurs.

Claimant Belinda Harrelson has a bachelor's degree in recreational therapy. She was hired in January 1982 into the position of Director of Recreational Therapy for respondent Pine Crest Psychiatric Center, and she worked in that capacity from February 9, 1982 to May 20, 1982. At her pre-employment interview, Harrelson indicated that she had no expertise in the field of psychiatric therapy but that she was willing to endeavor to obtain knowledge in that field. Pine Crest hired claimant with this understanding, and proposed to train her in psychiatric therapy while she worked there at the center.

Pine Crest Psychiatric Center was apparently a relatively new facility, and its programs were still in the formative stage when claimant began her employment. Pine Crest had no personnel manual or policy manual, and indeed, claimant was helping to write one during her employment with the respondent. Pine Crest had

claimant design her own job description and accepted what claimant included in that description. From the record and testimony, it appears that claimant's duties were not clearly articulated, and that respondent's administration did not set forth concrete guidelines or expectations upon which claimant could rely.

Claimant was subject to an initial 90-day probationary period. On April 27, 1982, she was given a performance evaluation by Mike Cancelosi, the facility's administrator. A letter placed into the psychiatric center's files following this interview was signed by Cancelosi but not signed or acknowledged by claimant. The letter reflected that Harrelson had not passed probation and that her probation time would be extended an additional 90 days. The letter stated the employer's observations of claimant as follows:

"a. Attitude has been observed as negative, belligerent, childish and immature.

"b. Belinda has not developed the required clinical skills in the past 75 days which are critical to the maintenance of this position. When Belinda was originally hired she was informed that we were not interested in maintaining a purely crafts position.

"c. Belinda was to develop a plan, that would be submitted to me, regarding her working with the clinical staff to improve the quality of her clinical responsibility to the patients and Pine Crest and provide herself with a more thorough understanding of the clinical problems of the psychiatric and alcohol patients."

Claimant, by written statements contained in the exhibits herein, asserts that she never saw this letter, that she was never aware she was being counseled for unsatisfactory performance, and that the respondent-employer referred to these sessions as "meetings" rather than as counseling sessions, when requesting her to attend. She denied having had a negative, belligerent, or immature attitude and said that fellow staff members complimented her on her enthusiasm, creativity, and concern for clients. She contended that her supervisor did not encourage her in her work, but instead gave her inconsistent directions, unreasonable demands, and unconstructive criticism.

On April 28, 1982, the day following the meeting with Cancelosi, claimant submitted to her supervisors a plan for improvement, wherein she outlined and discussed five specific job areas in which she hoped to improve herself. These areas included clinical training with staff members; participation in staff meetings; education, through in-service training and college courses; accepting criticism; and scheduling patient therapy groups.

On April 29, claimant met with Cancelosi and the Director of Nursing Services, Renee Guerena, to discuss her proposed improvement plan. Cancelosi and Guerena found the plan acceptable. The employer states that, at this meeting, claimant's assigned supervisor was changed from Cancelosi to Guerena, and that claimant thereafter refused to report to Guerena. Claimant denied having so refused and stated she was unaware that Guerena had become her "supervisor."

On May 19, 1982, claimant met with Guerena. The employer's summation of this meeting reflects that Guerena informed claimant that Pine Crest was dissatisfied with claimant's work, and specifically, that claimant had refused to report to Guerena or to alter her organizational chart to reflect a new supervisor; had been repeatedly absent from staff meetings and had failed to report those absences; had neglected client assessments; had neglected to arrange training sessions with staff, as agreed; and had demonstrated a poor attitude. Claimant testified that, when she met with Guerena, she brought along her organizational chart to have it changed and thought this was satisfactory; that she never refused to report to Guerena and, indeed, did not know that a formal change of her supervisor had been effected; that

she absolutely did not neglect her clients, but rather gave her best efforts in their regard; and that she did not display a negative or belligerent demeanor. To the employer's charge that she arrived late, or not at all, to staff meetings, she answered that the morning staff meetings did not have a precise starting time but were somewhat informal, and that she often was stopped by a patient on her way to such meetings. She said she felt that conversing with the patients, listening to their concerns and hearing of their progress in therapy was justification for being tardy to staff meetings.

The parties gave conflicting testimony regarding an episode when another staff member made an appointment for an outpatient to receive therapy from claimant, and claimant missed the appointment because she was absent from work. The employer contended claimant was unexcused and had not given proper notice of her intent to miss a day of work. Pine Crest's management testified to the existence of mail slots in a designated place in the building where claimant allegedly should have left a note for her supervisor or for the staff member who scheduled the appointment. Claimant and her witness asserted that claimant gave verbal notice of her intent to take the day off, that she left a note at the nurse's station for the proper supervisor, that this method of giving notice was reasonable and customary at the psychiatric center, and that the other staff member never confirmed with claimant the scheduling of the appointment with the patient in question.

An area of dispute, and a reason given for claimant's discharge, is her admitted statement that her philosophy of therapy differed from that of her employer, especially with regard to group therapy. Cancelosi testified that the center could not have claimant as an employee if she could not accept Pine Crest's approaches to patient care. Claimant stated that, while her professional opinions varied from those of Pine Crest, she was willing to adjust her methods and to conform to those condoned by her employer.

These and other areas of dispute were submitted to a D.O.E. hearing examiner who determined the claimant was ineligible for benefits, having been discharged for misconduct.

"The claimant was discharged because of her attitude and absenteeism. Though there is conflicting evidence, a preponderance of the evidence establishes that the claimant failed on numerous occasions to attend staff meetings as expected by the employer, and that the claimant knew she was expected to do so.

"The employer made training available to the claimant so that she could improve her clinical skills. The claimant told her supervisor that her work scheduled conflicted with the offered training. The claimant was asked by her supervisor to provide a listing of times and days she was available for training, but the claimant failed to do so. At one point, the claimant told her supervisor that she refused to take training from a particular individual because she did not like him and refused to work with him. The claimant also stated that she does not agree with the employer's philosophy for treating patients, and that she never would." R., Vol. 2, p. 2.

The claimant requested a redetermination hearing with the Industrial Commission within the allotted appeal time. R., Vol. 2, p. 4. The Commission did not grant claimant a hearing before it, as it did in *Van Heukelom v. Pine Crest Psychiatric Center*, 106 Idaho 848, 684 P.2d 300 (1984). The Commission deemed the matter submitted upon the record of proceedings of the appeals examiner, indicating that no request for an Industrial Commission hearing had been made pursuant to the Rules of Practice and Procedure of the Commission. R., Vol. 2, p. 6. The findings of the appeals examiner were reviewed, adopted, and affirmed by the Industrial Commission.

The burden of proving misconduct falls strictly on the employer, and where the burden is not met benefits must be awarded the claimant. *Roll v. City of Middle-*

*ton,* 105 Idaho 22, 665 P.2d 721 (1983); *Parker v. St. Maries Plywood,* 101 Idaho 415, 614 P.2d 955 (1980). Misconduct has been construed by this Court to mean:

> "[a] willful, intentional disregard for the employer's interests; a deliberate violation of the employer's rules; or a disregard of the standards of behavior which the employer has the right to expect of his employees." *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 548, 307 P.2d 217, 219 (1957).

*See Cornwell v. Kootenai County Sheriff,* 106 Idaho 823, 683 P.2d 859 (1984); *Roll v. City of Middleton, supra; Simmons v. Dept. of Employment,* 99 Idaho 290, 581 P.2d 336 (1978). Claimant's behavior simply does not fall within the accepted meaning of disqualifying misconduct. All that the employer was here able to demonstrate was that the claimant had some *philosophical differences* with the employer and that her attendance record for staff meetings was, in its view, less than exemplary. There was conflicting testimony as to the number of times claimant was absent or late for staff meetings as well as the reasons for the tardiness or absence. *Philosophical differences* on humane treatment of mental patients, coupled with conflicting testimony as to alleged breach of the employer's rules, will not mount to the level of misconduct as previously defined by the Court. *Disagreeing philosophically with one's employer, where that disagreement is not manifested in insubordination or defiance* of a directive certainly is not unreasonable, and should not be declared as misconduct precluding a terminated employee from benefits.

The Commission, in considering the evidence presented to the hearing examiner, was required to examine the record of the hearing before the appeals examiner of the Department of Employment and then determine therefrom whether the examiner's findings of fact were adequately and sufficiently supported by the record. The Commission should then have considered, if the record did so support the findings, whether the conclusions of law as reached by the examiner were correct. The Commission had before the same written record which is before us. It simply adopted the decision of the appeals examiner as its decision. For my part, I am wholly unable to discern on what basis and on what evidence the Commission relied in its determination of misconduct. At the very least, the Commission had to conclude that the employer had the burden of proving claimant's misconduct and it had to find that burden sustained. *See Parker v. St. Maries Plywood, supra.* Agreeing that an extensive explanation of the examiner's determination of each minor factual issue presented is not required, the factual findings in this case do not even begin to touch upon the basic factual issues dealing with claimant's performance and are therefore insufficient to justify a denial of the benefits which the law intends to be available for working people discharged through no fault of their own. The very most that can be said here is that Harrelson did not, in the eyes of Pine Crest, turn out to be adapted or adaptable to working in this particular mental institution. She was hired on the basis of a *trial* period of employment, solid evidence that, just as Pall Malls aren't for everyone, working at Pine Crest is not for everyone, which Pine Crest itself recognized.

It is very difficult for me to accept that anyone could carefully peruse this short record and find disqualifying misbehavior.