725 P.2d 175

**Glenn GATHERER, Claimant-appellant,**

v.

**DOYLES WHOLESALE, Employer,**

**and**

**State of Idaho, Department of Employment, Respondents.**

**No. 16133.**

Supreme Court of Idaho.

Sept. 3, 1986.

Carl A. Follevaag, Coeur d'Alene, for claimant-appellant.

Jim Jones, Atty. Gen., and Larry F. Weeks, Deputy Atty. Gen., Boise, for respondents.

BAKES, Justice.

Glenn Gatherer appeals from an Industrial Commission decision finding him ineligible for unemployment benefits due to employ-

ment-related misconduct. The Industrial Commission's decision is supported by substantial and competent evidence and, accordingly, we affirm.

The Industrial Commission found the following facts, which are supported by the record.

Doyles Wholesale (Doyles) is a candy and tobacco wholesaler. Glenn Gatherer's (Gatherer) parents owned Doyles during Gatherer's childhood. He began working there parttime in 1971 at the age of eight. Later he became a full time employee, working in all areas of the business. In November, 1983, he became supervisor of the Doyles Wholesale warehouse.

Effective January 3, 1984, Gatherer's parents sold Doyles. Gatherer resented some of the changes made by the new owners. For example, in January, 1984, the new owners decided to raise the temperature in the warehouse. Gatherer thought the move would not be cost effective, believing that the money could be better spent on maintenance of the delivery vans. Thinking it to be a part of his job, Gatherer informed the new owners of his feelings about the change. Gatherer met with the owners in an office, but he raised his voice to the shouting point and other employees could hear him outside the office. The manager told Gatherer to hold his temper and not raise his voice where other employees could hear.

On another occasion in February or March of 1984, Gatherer was dissatisfied with the way the new owners wanted the warehouse rearranged, and he questioned the wisdom of that decision, expressing his dissatisfaction in front of other employees. The manager again told Gatherer to talk with him in private but not to air his grievances in front of other employees. In June, 1984, Gatherer, in the presence of other employees, disagreed with the manager about an order. The manager again told him not to express his disagreement in front of the office personnel.

Business at Doyles is heavier in the summer than in the winter. When Gatherer's parents owned the business, they paid employees a fixed monthly salary throughout the year. The employees worked overtime in the summer without being paid extra, but they worked less than full time for the same salary in the winter.

When the new owners took over the business, they continued the policy of paying employees a fixed salary throughout the year. However, Gatherer found that he worked more hours during the slow season. He attributed this increase in work to what he thought were unwise policies of the new owners, including the following: (1) after orders were filled, the new owners required that another worker double check them; (2) the new owners required that the warehouse workers seal all orders; (3) the new owners told the warehouse workers to slow down so they would make fewer errors; and (4) the new owners assigned Gatherer to some delivery work, leaving fewer employees to fill orders in the warehouse.

Gatherer became concerned that he was working overtime during the slow season and that the overtime hours would never be offset by less-than-full-time work as in the past. He began keeping a record of his working hours in March of 1984. His records show that, for sixteen weeks that he worked from March through July, he worked overtime every week except one. He calculated that he worked 58 hours of overtime during that period.

At 3:30 p.m. on July 12, 1984, Gatherer was tired after working eight and one-half hours that day. He thought that the remaining orders for the following day could be filled in time for the morning deliverymen because the warehouse workers were scheduled to begin work early the next morning. Gatherer went to the office and told the manager he was leaving for the day. The manager asked if Gatherer could stay until 4:00 p.m. Gatherer asked why he should stay when he was not getting paid for working overtime. Gatherer again raised his voice and "created a scene" in front of the other employees in the office. The Industrial Commission found that Gatherer raised his voice first, although both were involved in the shouting. The

manager said that he was tired of "bucking heads" with Gatherer and discharged him.

After he was discharged, Gatherer filed a complaint with the United States Department of Labor, which required Doyles to pay Gatherer $150.30 for overtime work for which he had not been paid. Gatherer also filed a claim for unemployment benefits on July 12, 1984. On July 24, 1984, the Department of Employment of the State of Idaho issued a determination that Gatherer was ineligible to receive unemployment benefits. After Gatherer protested, the Department of Employment issued a redetermination on August 23, 1984, affirming the original findings. Gatherer appealed to an appeals examiner who reaffirmed his ineligibility. Gatherer appealed to the Industrial Commission, which heard his case on April 25, 1985. The Industrial Commission affirmed the earlier decisions. Gatherer now appeals to this Court.

Under I.C. § 72–1366(e), in order to be eligible for unemployment benefits, a claimant must not have been "discharged for misconduct in connection with his employment." The sole issue in this case is whether the Industrial Commission's finding of Misconduct is supported by substantial competent evidence. In *Johns v. S.H. Kress Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957), this Court interpreted the term "discharged for misconduct" as the following:

> "[W]illful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees."

The Industrial Commission, citing *Johns*, found that Gatherer's conduct showed an intentional disregard of his employer's interest and a disregard of standards of behavior an employer has a right to expect of its employees and that Gatherer, therefore, was fired for misconduct. The record supports that finding.

Since the question of whether an employee's conduct constitutes misconduct pursuant to I.C. § 72–1366(e) is a factual one, the Industrial Commission's finding that an employee was fired for misconduct must be upheld if supported by substantial and competent evidence. Idaho Const. Art. 5, § 9. *See Puckett v. Idaho Dept. of Corrections*, 107 Idaho 1022, 1024, 695 P.2d 407, 409 (1985); *Goolsby v. Life Savers, Inc.*, 107 Idaho 456, 459, 690 P.2d 911, 914 (1984); *Harrelson v. Pine Crest Psychiatric Center*, 107 Idaho 119, 120, 686 P.2d 64, 65 (1984); *Cornwell v. Kootenai County Sheriff*, 106 Idaho 823, 825, 683 P.2d 859, 861 (1984); *Parker v. St. Maries Plywood*, 101 Idaho 415, 419–420, 614 P.2d 955, 959–960 (1980); *Watts v. Employment Security Agency*, 80 Idaho 529, 534, 335 P.2d 533, 536 (1959).[1]

A review of the record before us indicates that the Industrial Commission's finding that Gatherer was fired for misconduct is supported by substantial and competent evidence. As the commission noted, Gatherer was fired for repeatedly expressing his disagreements with company policies loudly and in the presence of other employees, contrary to the express direction of the employer. On each occasion, Gatherer was told to express his disagreements with company policy privately and quietly. Gatherer, a supervisor himself, ignored this company rule and continued to criticize company policy vociferously and in front of other employees. The matter came to a head on July 12th, when Gatherer "made a scene"

---

1. One case, *Avery v. B & B Rental Toilets*, 97 Idaho 611, 549 P.2d 270 (1976), stated that the issue as to whether an employee's conduct constitutes misconduct is a question of law. This statement in *Avery* is unsupported by authority and is directly at odds with all the other established Idaho case law which treats the question as a question of fact. *See Puckett v. Idaho Dept. of Corrections*, 107 Idaho 1022, 1024, 695 P.2d 407, 409 (1985); *Goolsby v. Life Savers, Inc.*, 107 Idaho 456, 459, 690 P.2d 911, 914 (1984); *Harrelson v. Pine Crest Psychiatric Center*, 107 Idaho 119, 120, 686 P.2d 64, 65 (1984); *Cornwell v. Kootenai County Sheriff*, 106 Idaho 823, 825, 683 P.2d 859, 861 (1984); *Parker v. St. Maries Plywood*, 101 Idaho 415, 419–420, 614 P.2d 955, 959–960 (1980); *Watts v. Employment Security Agency*, 80 Idaho 529, 534, 335 P.2d 533, 536 (1959).

in front of the other employees. It is clear that after having warned Gatherer several times to restrain himself, his employer had a right to expect Gatherer not to violate that employment rule. Gatherer's repeated failure to comply with his employer's direction was viewed by the commission as an intentional disregard of his employer's interest and a disregard of the standards of behavior which the employer had a right to expect of its employees. The record supports that finding.

It is of no consequence that Gatherer may have believed he was aiding his employer by suggesting improved policies for the warehouse. As we stated in *Matthews v. Bucyrus Erie Co.*, 101 Idaho 657, 619 P.2d 1110 (1980):

> "[T]he test for misconduct in standard of behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case. *The employee's subjective state of mind is irrelevant.*" *Id.* at 659, 619 P.2d at 1112 (emphasis added).

Gatherer had been repeatedly instructed to privately approach management with his disagreements with the employer's policies, and his outbursts, particularly the one on July 12th, which resulted in Gatherer's discharge, can only be viewed as showing a disregard for the standards that Doyles had a right to expect of its employees.

Nor are we convinced that *Avery v. B & B Rental Toilets*, 97 Idaho 611, 549 P.2d 270 (1976), mandates a different result here. In *Avery*, this Court stated that "a single incident of comparatively non-serious disrespect by complaining and arguing is not misconduct." *Id.* at 615, 549 P.2d at 274. In *Avery*, the employee, with no previous history of challenging his superiors, had become upset when he was unexpectedly faced with a particularly unpleasant cleaning task not of his making, the nature of which is apparent from the title of that case. On those facts, this Court held that the employee's single outburst did not constitute misconduct. Here, on the other hand, Gatherer was not fired because of a single incident. Rather, as the record clearly reflects, Gatherer had repeatedly violated the employer's rule by challenging his superiors in front of other employees. Given Gatherer's position as supervisor, such repeated open insubordination clearly supports the commission's finding of misconduct.

Accordingly, we uphold the decision of the Industrial Commission. Costs to respondent; no attorney fees.

DONALDSON, C.J., SHEPARD, J., and TOWLES, J. pro tem., concur.

HUNTLEY, Justice, dissenting.

The sole issue in this case is whether Gatherer is eligible for unemployment benefits under I.C. § 72–1366(e). That section states that, in order to be eligible for unemployment benefits, a claimant must not have been "discharged for misconduct in connection with his employment." *Id.* This court will not overturn the findings of the Industrial Commission if those findings are supported by substantial and competent evidence. *Gaehring v. Department of Employment*, 100 Idaho 118, 119, 594 P.2d 628, 629 (1979). However, after accepting the facts as found by the Commission, it is the province of the court to determine the legal consequences which flow therefrom under mandate of the applicable statutes.

In *Johns v. S.H. Kress Co.*, 78 Idaho 544, 548, 307 P.2d 217, 219 (1957), this Court interpreted the term "discharged for misconduct" as the following:

> " ... willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees."

The referee cited *Johns* and concluded that Gatherer's conduct showed both an intentional disregard of his employer's interest and a disregard of standards of behavior an employer has a right to expect of its employees. I disagree with that conclusion. Nothing in the record establishes

that the suggestions were for the benefit of anyone other than the employer and the employer's best interest. Gatherer did not act in "willful, intentional disregard of [his] employer's interest." *Id.* In fact, in all the incidents leading up to Gatherer's discharge, Gatherer believed he was aiding his employer by suggesting improved policies for the warehouse. On the day Doyles fired Gatherer, he was protesting an illegal practice by his employer. An employer has no legitimate interest in having its employees work uncompensated overtime. Moreover, there is nothing in the record to indicate that Doyles' business was at all adversely affected by Gatherer's behavior.

The fact that Gatherer raised his voice in these incidents does not suffice to raise his conduct to the level of intentional disregard of his employer's interest. The record contains no evidence that Gatherer's outbursts were deliberate. Doyles may have acted within its rights in firing Gatherer for his behavior, but that is not the issue before the court. This Court held in *Avery v. B & B Rental Toilets,* 97 Idaho 611, 614, 549 P.2d 270, 274 (1976) that "a single incident of comparatively non-serious disrespect by complaining and arguing is not misconduct." The referee distinguished *Avery* by saying that Gatherer argued with his manager several times rather than only once. I believe that the referee read *Avery* too literally. Instead, we should focus on the non-serious nature of Gatherer's conduct. The fact that Gatherer acted in an informal representative capacity and could be expected to speak up about warehouse practices, coupled with the fact that he spoke out but a few times and apparently did not disrupt or cause harm to Doyles' business, suffice to make Gatherer's conduct "non-serious" under *Avery.*

The *Avery* exception applies to all the types of misconduct cited in *Johns, supra.* Therefore, since Gatherer's actions were "non-serious" under *Avery,* his conduct could not have fallen below the level which his employer had a right to expect. I would conclude that Gatherer was not fired for misconduct under I.C. § 72–1366(e) and therefore is eligible for unemployment benefits.