933 P.2d 642

Marsha A. FOLKS, Claimant–Respondent,

v.

MOSCOW SCHOOL DISTRICT NO. 281, Employer–Appellant,

and

State of Idaho, Department of Employment, Defendant–Respondent.

No. 21484.

Supreme Court of Idaho,
Boise, September 1996 Term.

March 7, 1997.

Stoel Rives, LLP, Boise, for claimant-respondent. John E. Rumel argued.

Alan G. Lance, Attorney General; Carol L. Brassey, Deputy Attorney General, Boise, for defendant-respondent. Carol L. Brassey argued.

Green Law Offices, Boise, for appellant. Cumer L. Green argued.

TROUT, Chief Justice

This is an appeal from a decision by the Industrial Commission (Commission) granting unemployment benefits to respondent Marsha Folks on the basis that she was discharged, but not for misconduct related to her employment.

## I.

### BACKGROUND

Folks began working for Moscow School District No. 281 (District) in 1976 as the District's orchestra teacher. Alan Lee also taught for the District at that time. Folks alleges that she and Lee frequently used profane language when they spoke with each other and that they had a very informal relationship. Lee was promoted to the position of principal of Moscow Junior High School during the 1988–89 school year. In this capacity, Lee acted as Folks' supervisor.

Lee described his relationship with Folks as "turbulent." Two or three times a year, Folks would confront Lee in his office to discuss her dissatisfaction using a colorful variety of profane terms. Lee did not reprimand Folks for these private displays of profanity. On April 20, 1993, Lee informed Folks that the District planned to cancel the orchestra program for the next school year. This was a program which Folks had overseen for the prior seventeen years and which was very important to her. The following day, as Folks stood in the teachers' lounge, Lee walked by and spoke to her. When Folks did not respond, Lee asked her "if she was not speaking today." Folks then began to yell at Lee, using profane language. Other teachers and student teachers in the teachers' lounge, as well as students in the hallway, were within earshot of the "conversation." Folks refused Lee's request to continue the conversation in his office, slammed the door to the hallway, and continued to yell at him.

On May 20, 1993, the Board of Trustees issued a Notice of Possible Nonrenewal or Discharge to Folks. A hearing before the Board was held on August 3, 1993. Folks was terminated on August 30, 1993. She subsequently applied to the Department of Employment (Department) for unemployment benefits.

## II.

### PROCEDURAL HISTORY

On October 25, 1993, the Department issued an eligibility determination that Folks was not entitled to unemployment benefits because she was discharged for misconduct in connection with her employment. Folks appealed. On December 16, 1993, a Department appeals examiner conducted a hearing at which both Folks and the District presented evidence. On January 7, 1994, the appeals examiner issued a decision affirming the determination that Folks was ineligible for benefits.

The Industrial Commission conducted a *de novo* review of the record and, on May 23, 1994, issued a Decision and Order reversing the decision of the appeals examiner. It ruled that the District had not met its burden of establishing that Folks was discharged for employment-related misconduct. Therefore, she was eligible for unemployment compensation. The District appealed.

During the pendency of this appeal, the District sought to augment the Commission's record through admission of: (1) a 1980 Rec-

ommendation of Discharge for Folks which referred to Folks' use of profanity, and (2) a 1980 Agreement in which Folks agreed to abide by all statutes, regulations, and rules applicable to teachers. The Commission denied both requests in its Order After Remand. It found that the record already included the 1980 Agreement. With respect to the 1980 Recommendation of Discharge, the Commission found that the District had failed to explain adequately its failure to present the Recommendation of Discharge in the earlier proceeding and, further, that the Recommendation would have been irrelevant to the Commission's determination of the issue. The District has appealed the Commission's denial of its motion to augment the record with the Recommendation of Discharge, as well as its determination that Folks was not discharged for employment-related misconduct.

In addition, the Commission denied Folks' request for attorney's fees incurred while defending the District's motion to augment the record. Folks has appealed this decision.

### III.

### EMPLOYMENT-RELATED MISCONDUCT

#### A. Standard of review

■ In appeals from the Industrial Commission, this Court is limited to reviewing questions of law. Idaho Const. art. V, § 9; *Welch v. Cowles Publ'g Co.*, 127 Idaho 361, 363, 900 P.2d 1372, 1374 (1995) (citing *Hart v. Deary High Sch.*, 126 Idaho 550, 552, 887 P.2d 1057, 1059 (1994)). We will disturb the Commission's findings of fact only where they are not supported by substantial and competent, though conflicting, evidence. Idaho Const. art. V, § 9; *Welch*, 127 Idaho at 363, 900 P.2d at 1374 (citing *Hart*, 126 Idaho at 552, 887 P.2d at 1059); *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 278, 787 P.2d 263, 264 (1990) (citing *Kyle v. Beco Corp.*, 109 Idaho 267, 270, 707 P.2d 378, 381 (1985)). This Court has defined substantial and competent evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Welch*, 127 Idaho at 365, 900 P.2d at 1376 (citing *Laundry v.*

*Franciscan Health Care Ctr.*, 125 Idaho 279, 282, 869 P.2d 1374, 1377 (1994)). Although this Court will set aside the Commission's order if it is not supported by the record, we will not overrule the Commission's findings solely on the ground that we might have reached a different conclusion. *Avery v. B & B Rental Toilets*, 97 Idaho 611, 613–14, 549 P.2d 270, 272–73 (1976); *Welch*, 127 Idaho at 363, 900 P.2d at 1374 (citing *Spruell*, 117 Idaho at 279, 787 P.2d at 265).

■ The question of whether an employee's behavior constitutes misconduct in connection with employment pursuant to I.C. § 72–1366(e) is a question of fact, and we will uphold the Commission's determination of this issue if supported by substantial and competent evidence. *Welch*, 127 Idaho at 364, 900 P.2d at 1375 (citing *Taylor v. Burley Care Ctr.*, 121 Idaho 792, 793, 828 P.2d 821, 822 (1991); *Goolsby v. Life Savers, Inc.*, 107 Idaho 456, 459, 690 P.2d 911, 914 (1984)). The Commission in its Decision and Order mistakenly asserted that the issue of whether intentional insubordination amounts to misconduct is a question of law, citing *Avery*, 97 Idaho at 614, 549 P.2d at 273. This Court, however, has disagreed with this aspect of *Avery* and held that the question of whether an employee's behavior constitutes misconduct is one of fact. *Gatherer v. Doyles Wholesale*, 111 Idaho 470, 472 & n. 1, 725 P.2d 175, 177 & n. 1 (1986). Thus, although the Commission labeled the bulk of its Decision and Order "CONCLUSIONS OF LAW," the Commission actually made findings of fact with regard to whether the District discharged Folks for employment-related misconduct, and we will review these findings as such. The Commission's sole conclusion of law was the determination that, because Folks had not been discharged for misconduct in connection with her employment, she was entitled to unemployment benefits.

#### B. Framework

■ I.C. § 72–1366(e) provides that an employee who has been discharged is eligible for unemployment benefits so long as his discharge was not for "misconduct in connection with his employment." Misconduct in

connection with employment is defined as one of the following:

1. A willful, intentional disregard of the employer's interest;
2. A deliberate violation of the employer's reasonable rules; or
3. A disregard of the standards of behavior which the employer has a right to expect of his or her employees.

IDAPA 09.01.30.331.01–.03; *Wulff v. Sun Valley Co.*, 127 Idaho 71, 74, 896 P.2d 979, 982 (1995) (citing *Campbell v. Bonneville County Bd. of Comm'rs*, 126 Idaho 222, 225, 880 P.2d 252, 255 (1994)); *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 548, 307 P.2d 217, 221 (1957). The burden of proving employment-related misconduct lies with the employer. IDAPA 09.01.30.331.06; *Parker v. St. Maries Plywood*, 101 Idaho 415, 419, 614 P.2d 955, 959 (1980).

## C. Intentional insubordination

■ The District argues that Folks' April 21 outburst constituted intentional insubordination amounting to misconduct, which is defined as "a deliberate or wilful refusal by an employee to obey a reasonable order or directive which an employer is authorized to give and entitled to have obeyed." *Avery*, 97 Idaho at 614, 549 P.2d at 273 (footnote omitted). Although an employer's expectation that an employee will not engage in "protracted argument" with his employer is objectively reasonable, a "single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct." *Id.* at 614–15, 549 P.2d at 273–74.

■ Initially, it is important to clarify where "intentional insubordination" fits for the purposes of analyzing misconduct. Our previous intentional insubordination cases do not clearly specify within which of the three categories of misconduct such behavior falls, although this Court appears to have analyzed them under the "disregard of standards of behavior" prong. *See, e.g., id.* at 614, 549 P.2d at 273 ("Misconduct, which will disqualify a claimant from receiving employment benefits under the Employment Security Act, includes a disregard of standards of behavior which the employer has a right to expect of his employee." (footnote omitted)); *Ortiz v.*

*Armour & Co.*, 100 Idaho 363, 366, 597 P.2d 606, 609 (1979) ("It is the conclusion of this Court that the claimant did violate the standards which his employer had a right to expect of him at this time."). This appears to be the most appropriate of the three categories for purposes of analysis. Intentional insubordination is merely one way by which an employer can prove misconduct as a disregard of the standards of behavior which the employer has a right to expect.

■ In "standard of behavior" cases, this Court employs a two-prong test: (1) whether the employee's conduct fell below the standard of behavior which the employer had a right to expect, and (2) whether the employer's expectation was objectively reasonable under the circumstances. *Matthews v. Bucyrus–Erie Co.*, 101 Idaho 657, 659, 619 P.2d 1110, 1112 (1980); IDAPA 09.01.30.331.03(a)-(b). The employee's disregard of a standard of behavior need not be subjectively intentional or deliberate. *Matthews*, 101 Idaho at 659, 619 P.2d at 1112. *See, e.g., Avery*, 97 Idaho at 614, 549 P.2d at 273; *Ortiz*, 100 Idaho at 366, 597 P.2d at 609. The "intentional insubordination" cases draw our focus more closely to the first prong—whether the employee's insubordination was such that it fell below a standard which the employer had a right to expect.

■ Applying *Avery* to the instant case, substantial and competent evidence supports the Commission's finding that the April 21 argument constituted a single incident of comparatively nonserious disrespect which did not rise to the level of misconduct. To determine whether the April 21 outburst was an episode of "comparatively nonserious" disrespect, we must consider the nature of the relationship between Lee and Folks and the source of tension between them. The record before the Commission established that Lee and Folks had worked together as teachers for a long period and that they had frequently used profane language in each others' presence; that after Lee's promotion to principal, their relationship remained informal but turbulent; and that Folks often visited him in his office to express her dissatisfaction with the administration using profanities. In

addition, Folks was in an emotional state of mind due to a myriad of personal problems of which Lee was aware. She had received upsetting news the previous day regarding the cancellation of the school's orchestra program, her main work, and was still distraught. In light of their relationship and Folks' state of mind, her statements to Lee and her use of obscenities on April 21 constituted a comparatively nonserious instance of disrespect.

■ Furthermore, substantial and competent evidence supports the finding that Folks' outburst did not constitute a "willful or deliberate" act, a requirement necessary to support a finding of intentional insubordination. As discussed above, the Commission found that Folks was under extreme emotional stress. Rather than deliberately refusing to follow Lee's direction that they continue their discussion in his office, substantial and competent evidence supports the finding that her conduct was an emotional, knee-jerk reaction to a stressful situation. Because she lacked the requisite intent, Folks' behavior did not rise to the level of intentional insubordination.

## D. Disregard of standards of behavior

■ In its decision, the Commission also addressed whether Folks' conduct might be a violation of the standards of behavior apart from intentional insubordination. The District argues that Folks' April 21 outburst constituted a disregard of the standards of behavior which the District had a right to expect, regardless of whether her conduct was willful, intentional, or deliberate. This part of the Commission's analysis focused on the second prong of the *Matthews* test: whether the employer's expectations were objectively reasonable under the circumstances. Whether the employer's expectations were objectively reasonable is a question of fact. *Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 1094, 695 P.2d 1231, 1233 (1984).

■ The Commission found that the District's expectations in this case were unreasonable and thus that Folks' failure to meet these standards did not constitute misconduct related to her employment. Although an employer's expectations are ordinarily reasonable only where they have been communicated to the employee, some expectations and standards of behavior "flow normally from an employment relationship" and need not be communicated to the employee to support a claim of employment-related misconduct. *Wulff,* 127 Idaho at 75, 896 P.2d at 983 (quoting *Davis,* 107 Idaho at 1094, 695 P.2d at 1233).

■ Substantial and competent evidence in the record supports the Commission's finding that the District's expectations were not objectively reasonable. Although the expectation that a junior high school teacher would refrain from using profanity on the job would appear to be a reasonable expectation that "flows naturally" from the employment relationship, the record supports the finding that Folks had engaged in an ongoing course of conduct with Lee that included the use of profane language. During previous discussions with Lee in which Folks used profanity, Lee did not formally reprimand her but simply "requested" that she not direct that type of language toward him. Through his acquiescence, Lee led Folks to believe that such conduct was acceptable and that it was not inappropriate or unprofessional. Lee's tolerance of this behavior thus rendered unreasonable any expectations held by the District that Folks not use profane language.

We must emphasize at this point what we are *not* ruling. First, we are not holding that a teacher's use of profanity in school is appropriate behavior. The District had every right to discipline Folks for such behavior in any way it deemed fit. The only issue in this case is whether Folks is eligible for unemployment benefits. Secondly, we are not ruling that an employer loses its right to object to an employee's behavior simply because it has tolerated such conduct in the past. Where an employer passively turns a blind eye to otherwise objectionable conduct on the part of an employee, the employer does not lose the ability to discipline or terminate the employee for behavior which amounts to employment-related misconduct. In the instant case, however, Lee did more than passively tolerate Folks' behavior. For

a period of two to three years, Lee continued to communicate with Folks in the same informal manner to which they both had become accustomed when they were teaching colleagues; this included the use of profanities. By not reprimanding Folks when she used such language, Lee indicated to Folks that such behavior was appropriate conduct between them. Lee's behavior in this case thus constituted more than passive acceptance of inappropriate behavior.

Our decision in *Gatherer v. Doyles Wholesale*, 111 Idaho 470, 725 P.2d 175 (1986), in which we upheld the Commission's finding of misconduct on similar facts, does not require that we find that Folks disregarded a standard of behavior which the District had a right to expect. That case is distinguishable from the current case in two respects. Most importantly, in that case, the Commission found misconduct, and we ruled that substantial and competent evidence in the record supported that finding. *Id.* at 473, 725 P.2d at 178. Here, in contrast, the Commission did not find misconduct, and, as discussed above, substantial and competent evidence supports this finding. Secondly, in *Gatherer*, the employee repeatedly expressed his dissatisfaction with management policies by shouting at supervisors in front of other employees, and each time the employer told him to express his grievances privately. *Id.* at 471–72, 725 P.2d at 176–77. In upholding the Commission's finding of misconduct, we noted that the employer's repeated warnings and reprimands created an objectively reasonable expectation that the employee would not engage in such conduct. *Id.* at 472–73, 725 P.2d at 177–78. In the instant case, however, Folks had not been previously reprimanded, and in fact Lee had formerly accepted her use of profane language; no reasonable expectation comparable to that in *Gatherer* was formed.

**E. Conclusion**

On appeal the District has not challenged the Commission's findings with respect to either of the other two methods of proving employee misconduct. *See, e.g., Dietz v. Minidoka County Highway Dist.*, 127 Idaho 246, 899 P.2d 956 (1995). Thus, these are not issues on appeal. Substantial and competent evidence supports the Commission's finding that Folks' behavior did not constitute employment-related misconduct as a disregard of standards of behavior which the employer had a right to expect.

## IV.

### MOTION TO AUGMENT THE COMMISSION'S RECORD

 The District argues that the Commission erred in refusing to augment the record with the 1980 Recommendation of Discharge. Idaho Code § 72–1368(g) provides in part:

The record before the commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the commission that the interests of justice require that the interested parties be permitted to present additional evidence. In that event, the commission may, *in its sole discretion*, conduct a hearing to receive additional evidence....

(emphasis added). This Court thus reviews the Commission's decisions regarding the submission of additional evidence for abuse of discretion. *See, e.g., Harris v. Beco Corp.*, 110 Idaho 28, 713 P.2d 1387 (1986). We have noted previously that this section does not *require* the Commission to consider additional evidence: "This section is not a carte blanche allowing ... [a party] the unbridled right to present a substantially new case, absent some showing as to why the evidence had been unavailable earlier." *Rogers v. Trim House*, 99 Idaho 746, 750, 588 P.2d 945, 949 (1979) (quoting *White v. Idaho Forest Indus.*, 98 Idaho 784, 785 n. 1, 572 P.2d 887, 888 n. 1 (1977)).

The District in this case has not adequately explained why it was unable to present the 1980 Recommendation of Discharge at the hearing before the appeals examiner. Characterizing the discovery of the document as a "pure accident," the District argues that it could not have discovered the document with the exercise of reasonable diligence because none of the District's current employees knew of the document's existence. The

Commission disagreed with this assertion, noting that the District knew of the 1980 Agreement, which was entered into in response to the 1980 Recommendation of Discharge, prior to the hearing before the appeals examiner. This document listed the parties to the Agreement, some of whom could have been questioned regarding the circumstances which precipitated the Agreement. In fact, the record demonstrates that the District's counsel was aware of the Agreement and Recommendation of Discharge as early as August 3, 1993—four months prior to the hearing before the appeals examiner. The transcript of the August 3 hearing conducted by the District which resulted in Folks' discharge indicates that the District's counsel specifically referred to these documents in his opening statement. From these facts, the Commission reasonably ruled that the District could have discovered the Recommendation of Discharge prior to the hearing with the exercise of minimal diligence. The Commission's finding that the District did not meet its burden of adequately explaining its failure to produce the Recommendation at the prior hearing thus does not constitute an abuse of discretion, and we affirm the Commission's ruling on the motion to augment.

## V.

### ATTORNEY'S FEES

■ Folks based her request for attorney's fees on I.C. § 12–123, and the Commission denied her request on the basis that a claim for unemployment benefits does not constitute a civil action and thus that I.C. § 12–123 does not apply. At oral argument, however, Folks withdrew her request for fees under § 12–123, apparently conceding that that statute does not apply to this proceeding, and instead asserted that she should be awarded sanctions under I.A.R. 11.1. Because Folks did not include this argument in her briefs submitted to this Court or cite supporting authority, we decline to award attorney's fees under Rule 11.1. *See City of Sun Valley v. Sun Valley Co.*, 128 Idaho 219, 223, 912 P.2d 106, 110 (1996) ("We will not address issues on appeal which are completely without support, argument, or authority.").

## VI.

### CONCLUSION

We affirm the decision of the Industrial Commission as there is substantial and competent evidence in the record to support the Commission's determination that Folks was not discharged for employment-related misconduct. We award costs on appeal to Folks.

McDEVITT and SILAK, JJ., and SWANSTROM, J. Pro Tem., concur.

SCHROEDER, Justice, dissenting.

I dissent from the Court's decision that the record supports the Commission's determination that Folks' conduct did not constitute a disregard of the standards of behavior which the District had a right to expect. The Commission's sanitized version of the events do not convey the flavor of Lee's conduct as well as the following findings by the Board of Trustees of the Moscow School District:

1. That over the last four to five years, Marsha Folks has engaged in a continuous course of conduct at the Moscow Junior High School which involved vulgar outbursts by Mrs. Folks during which time she falsely accused her direct supervisor, Principal Alan Lee, of misdeeds and used profane, unprofessional and inappropriate language despite being requested to refrain from such usage.

2. That over the last eight years, Mrs. Folks has verbally abused and screamed at students including using profanity in certain cases.

3. That in 1988, Marsha Folks in the presence of Ken LeBlanc and within the hearing of K.C. Albright referred to high school Principal K.C. Albright as a "fucking son of a bitch".

4. That while performing services at Moscow High School, Mrs. Folks [sic] personality was abusive, intimidating and confrontational and she continuously used profane language within the confines of the school building including, but not limited to, frequent use of the words "fucking" and "bull shit".

5. That on April 21, 1993, Marsha Folks verbally attacked her direct supervisor, Alan T. Lee, in the teacher's lounge in the Moscow Junior High School, commencing at approximately 1:25 p.m.

6. That such outburst was in the presence of teachers of the District, a teacher's aide of the District, a student teacher of the District and was heard by students of the District. During such outburst, Mrs. Folks wrongfully accused Principal Lee of undermining her programs, called him a "fucking asshole" and a "son of a bitch" and communicated in loud screaming language frequently using other profane words such as "goddamned" and "bullshit".

7. That during such outburst, Principal Lee requested that Marsha Folks complete the discussion with Principal Lee in his office outside the hearing range of others which she refused to do.

These findings were not disavowed by the Commission. There are several points of concern that warrant comment about the Commission's decision and this Court's acceptance of that position:

First, a dangerous precedent is established in the determination that Lee's tolerance of Folks' prior outbursts rendered the Districts' expectations that Folks not use profane language unreasonable. Instead of Folks' prior poor conduct weighing against her, as it should, it weighs against her employer. Employers had best be warned that kindness is an imprudent trap. According to the Commission's logic missteps must be disciplined. Otherwise the tolerant employer has given up the right to expect a decent standard in the future and to finally say "enough is enough." It is clear that Folks had many problems and acute psychiatric difficulties that warranted sympathy and understanding. The logic in this case is that the employer erred in being tolerant of her behavior in the past. Tolerance became a trap. No reasonable person can believe that the employer intended to lower conduct standards to the level exhibited in this case, but that is the effect of the Commission decision.

The next problem is the Commission's willingness to take literary license and turn facts topsy-turvy in its "Conclusions of Law." The Commission concluded that Lee provoked the outburst by Folks. The "provocation" amounted to Lee asking Folks, "if she was not speaking today," after she did not respond to him. The Commission made an unusual Conclusion of Law: "Mr. Lee's attempt to speak to Claimant on April 21 was inappropriate." The two were in the teachers' lounge. They had known each other for years. He was her boss. But according to the Commission he should not have spoken to her. Employers had best develop a litmus test to determine if on a particular day they may speak to their employees and colleagues in an informal setting.

According to the Commission Lee "pulled rank" on Folks when she began to shout obscenities which were audible to other staff and students. The Commission does not give us a finding of fact or conclusion of law as to how he should have responded to the outburst. "Pulling rank" was clearly in order when the outburst began.

In its effort to make the irrational sound rational, the Commission made the following statement in its "Conclusions of Law" concerning Lee and Folks' conduct: "He for some reason, took it upon himself to explore how Claimant was *feeling*—i.e. whether she was still talking to him—and he got exactly what he asked for—her feelings at that moment." This is an unusual conclusion of law, if treated as such. If treated as a finding of fact, it is without support. There is no evidence that he asked for her feelings at that moment. The Commission's "Conclusion of Law" is hyperbole intended to make the unreasonable sound reasonable.

This Court shows extreme respect for the findings of the Commission, even when the Commission casts them as conclusions of law. That is proper. But the conclusions of the Commission in this case are not supported by the facts. The conduct of the employee fell below a reasonable standard of behavior and constituted misconduct.