974 P.2d 78

**Stella M. PIMLEY, Claimant–Appellant,**

v.

**BEST VALUES, INC., dba Best Value IGA, Employer–Respondent,**

and

**State of Idaho, Department of Labor, Respondent.**

No. 23878.

Supreme Court of Idaho, Boise, January 1999 Term.

Feb. 25, 1999.

Stella M. Pimley, Kuna, appellant pro se.

Hon. Alan G. Lance, Attorney General; Evelyn Thomas, Deputy Attorney General, Boise, for respondent State of Idaho.

S. Fred Wheeler, Kuna, for respondent Best Values, Inc.

WALTERS, Justice

This is an appeal from the Idaho Industrial Commission's decision finding Stella Pimley ineligible for unemployment insurance benefits because she was discharged for misconduct. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

Pimley was hired as a cashier at the Kuna Best Value IGA grocery store in October 1994. On April 3, 1996, she was scheduled to work an afternoon shift and then have the next two days off for her "weekend." She came by the store in the morning on April 3 to make a purchase. When she arrived, Pimley learned that two other coworkers had been called in to work, rather than her, to replace two employees who had gone home sick that morning. Pimley became upset because she had more seniority than the two replacement employees who were called in, and she could have left early for her weekend if she had been allowed to work the morning shift. Pimley left the store, but returned at 1:00 p.m. for her scheduled shift. Before leaving for lunch at 4:00 p.m., Pimley told her store manager and immediate supervisor, Sue Stoffle, that she was not feeling well and might not return after lunch. Stoffle believed that Pimley was not sick but was merely angry because the other employees had been called in to work that morning. Stoffle told Pimley to return after lunch because the store was already short-handed. Pimley agreed to return.

Shortly after her discussion with Stoffle, Pimley walked toward the rear of the store and—in front of two coworkers—repeatedly referred to Stoffle in vulgar and derogatory expletives. The comments were made on the floor of the store, in the dairy section where they could be overheard by customers. Pimley did not return to work that evening.

When she returned to work at the store on April 7, she was discharged by Stoffle. According to Stoffle, Pimley was fired because of her attitude including the vulgar and derogatory comments made on April 3.

The Idaho Industrial Commission found that Pimley had been discharged by her employer, Best Value, for the vulgar and derogatory comments and that these constituted misconduct. Consequently, the Commission denied Pimley's application for unemployment insurance benefits.

Pimley's appeal presents the following issues:

1. Whether there is substantial and competent evidence in the record to support the Industrial Commission's findings and conclusions that Pimley was discharged for misconduct.

2. Whether there is substantial and competent evidence in the record to support the Industrial Commission's findings and conclusions that the misconduct was work-related.

3. Whether Pimley received a fair hearing when the appeals examiner took testimony from two of Best Value's witnesses after learning that they heard some of the testimony of another of Best Value's witnesses.

## I.

## THE INDUSTRIAL COMMISSION'S FINDING OF MISCONDUCT IS SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE.

When considering an appeal from the Industrial Commission, this Court is limited to reviewing questions of law. Idaho Const. Art. V, § 9. The Commission's findings of fact will not be disturbed on appeal where they are supported by substantial and competent evidence. I.C. § 72–732.

Idaho Code § 72–1366(e) renders a claimant ineligible for unemployment insurance benefits when the claimant was discharged for misconduct in connection with the employment. Whether an employee's behavior constitutes misconduct is a factual

determination that will be upheld unless not supported by substantial and competent evidence. *Folks v. Moscow School District No. 281,* 129 Idaho 833, 933 P.2d 642 (1997).

■ Pimley initially challenges the Commission's finding that she was fired because of her attitude and comments on April 3. She argues that she was fired because she did not return to work after lunch, and that this was not misconduct under the circumstances and in light of her good attendance record. Pimley argues that Best Value's witnesses were not consistent or credible and their testimony cannot support the Commission's findings. When she was fired, Pimley was given a "Warning Report" that indicated she had been fired because she did not return to work, or call to say she would not be returning, on April 3. According to Pimley, this "Warning Report" is dispositive, and any testimony contradicting it is not credible. This Court, however, does not reweigh the evidence or consider the credibility of witnesses. We will not disturb the Commission's findings solely on the basis of conflicting evidence. The particular question before this Court is whether the Commission's findings are supported by substantial and competent, though conflicting, evidence. Two of Best Value's employees testified that Pimley made the derogatory comments to them on the floor of the store, and that they told their supervisor, Sue Stoffle, what Pimley had said. Stoffle confirmed that she had been told of Pimley's comments and that she made her decision to fire Pimley on that basis. This testimony was accepted by the hearing officer as credible.

We hold that there is substantial and competent evidence to support the Commission's finding that Pimley was fired because of the vulgar comments made on April 3 and not because she failed to return after her lunch hour.

■ The next question is whether Pimley's actions constituted misconduct for purposes of unemployment benefits. The Industrial Commission found that Pimley's conduct constituted a disregard for the standards of behavior that her employer had a right to expect, and were thus misconduct under

IDAPA 09.01.30.331.03 (1997).[1] In order to form the basis for misconduct under this rule, the employee's conduct must fall below the standard of behavior that the employer had a right to expect, and the employer's expectations must be objectively reasonable under the circumstances. *Folks* at 837, 933 P.2d at 646. The employer's expectations must be communicated to the employee unless they flow naturally from the employment relationship. *Davis v. Howard O. Miller Co.,* 107 Idaho 1092, 695 P.2d 1231 (1984).

Pimley made vulgar and derogatory comments about her supervisor, in front of co-workers, on the floor of a retail establishment where customers could have overheard her statements. Best Value's owner, Russ Tuttle, testified that Pimley's conduct was not acceptable, indicating that it fell below the standards that Best Value expected from its employees. The Industrial Commission found that Best Value's expectation was reasonable. Although this expectation had not been conveyed to Pimley explicitly, the Commission also found that it was the type of expectation that naturally flowed from the employment relationship existing in this case.

■ We hold that an employer may reasonably expect that employees not use vulgar language in the presence of other employees and customers during business hours in a retail establishment, particularly where the vulgarities show disrespect for the employer and its management. Despite Pimley's belief that Best Value's expectation was "unusual," we hold that it flows naturally from the employment relationship and need not be specifically communicated.

■ Our decisions in *Folks v. Moscow School District No. 281,* 129 Idaho 833, 933 P.2d 642 (1997), *Gatherer v. Doyles Wholesale,* 111 Idaho 470, 725 P.2d 175 (1986), and *Avery v. B & B Rental Toilets,* 97 Idaho 611, 549 P.2d 270 (1976), do not dictate a different result. In *Folks,* a teacher was fired for an outburst of profanity directed at her school principal. Over the course of two or three years prior to the final incident, the teacher and the principal had engaged in a pattern of communication that often included the use of profanities on both sides. This Court upheld the Commission's finding that an expectation

---

**1.** This section is now found at IDAPA    09.01.30.275.02(c).

contrary to this established course of conduct was not objectively reasonable and therefore the teacher was not fired for misconduct. In Pimley's case there is no indication that Best Value indicated a tolerance for the use of profanity in the workplace. In *Gatherer*, this Court upheld the Commission's finding of misconduct where the employer repeatedly warned the employee that his conduct was not acceptable. Several times during the course of his employment Gatherer voiced his disagreement with management policies loudly and in the presence of other employees. Rather than acquiesce, the employer told Gatherer each time that the public outbursts were unacceptable and that he should express his disagreements in private. This Court upheld the Commission's finding that Gatherer was fired for misconduct when he once again failed to restrain himself despite the repeated warnings.

■ Although the existence of a pattern of conduct is certainly a factor to be considered, neither *Folks* nor *Gatherer* dictate that a pattern of conduct is necessary to determine the reasonableness of the employer's expectations. This Court has held that a "single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct." *Avery* at 615, 549 P.2d at 274. However, Avery was fired for a single incident that took place during a private telephone call and did not involve vulgar language. Here, Pimley directed her comments toward fellow coworkers and her outburst occurred on the floor of the store during business hours where customers could hear the statements, a much different situation than in *Avery*.

The Commission's finding that Pimley was fired for misconduct is not inconsistent with the prior decisions of this Court and is supported by substantial and competent evidence. We affirm the finding of misconduct.

## II.

## THE COMMISSION'S FINDING THAT PIMLEY'S CONDUCT WAS WORK-RELATED IS SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE.

Pimley next argues that all of the conduct that is allegedly misconduct occurred either before work or after she had already clocked out for lunch. Pimley suggests that any misconduct that occurred was not in connection with her employment or work-related. This argument has no merit.

■ There is no requirement that an employee be clocked in for misconduct to be work-related. *See, Puckett v. Idaho Dept. Of Corrections*, 107 Idaho 1022, 695 P.2d 407 (1985) (upholding the Commission's finding that a claimant who attacked his superior officer, off the clock, at an employee picnic was discharged for work-related misconduct). A finding that misconduct was work-related is a determination of fact that will be upheld unless not supported by substantial and competent evidence. *Beaty v. City of Idaho Falls*, 110 Idaho 891, 719 P.2d 1151 (1986). Pimley's comments were made to fellow workers, in the workplace, and degraded a supervisor. The Commission's finding that Pimley's misconduct was work-related is supported by substantial and competent evidence.

## III.

## REVERSIBLE ERROR HAS NOT BEEN ESTABLISHED WITH REGARD TO THE TELEPHONE HEARING.

■ The hearing examiner conducted a telephone hearing as provided by IDAPA 09.01.06.026.01 (1998). The notice of hearing received by the parties indicated that witnesses were to be excluded during the testimony of other witnesses. In the course of the hearing, it became apparent that some of Best Value's witnesses may have been present while other witnesses gave their testimony. Keith Deugan indicated that he had overheard "a little bit" of Stoffle's testimony, and that Lee Bennett might also have heard some testimony. Pimley failed to object to any breach of the procedure during the hearing, but now argues that the hearing was unfair because Best Value did not comply with the directive to exclude witnesses. She contends that the hearing examiner should have stopped the telephonic hearing and re-

sumed the hearing with the witnesses present in person, refused to allow Deugan to testify, or should have disregarded the part of Stoffle's testimony that might have influenced Deugan.

Although there appears to have been some confusion about the exclusion of witnesses during the telephonic hearing, we conclude that Pimley has failed to show any prejudice or harm. At Stoffle's request, both Deugan and Bennett provided written statements on April 4, the day after Pimley made the comments that resulted in her discharge, and three days before she was discharged. The testimony of the witnesses at the hearing was substantially consistent with these written statements made long before any alleged influence at the hearing. Pimley was given copies of the written statements prior to the hearing, and she and her representative cross-examined the witnesses regarding any possible inconsistencies or potential influence. There is no indication that the testimony of any witness was influenced by other witnesses who might have been overheard during the hearing. We hold that Pimley has failed to show that the hearing was unfair.

## CONCLUSION

The Industrial Commission's decision is affirmed. Costs to respondents.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL, CONCUR.