## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 36126

| | | |
|---|---|---|
| BENJAMIN C. GINTHER, | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, December 2010 Term |
| | ) | |
| v. | ) | 2010 Opinion No. 143 |
| | ) | |
| BOISE CASCADE CORPORATION, | ) | Filed: December 23, 2010 |
| Employer, and IDAHO DEPARTMENT OF | ) | |
| LABOR, | ) | Stephen Kenyon, Clerk |
| | ) | |
| Respondents. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is affirmed.

Benjamin Ginther, St. Helens, Oregon, appellant pro se.

John B. Dallum and Robert R. Ball, Boise, for respondent Boise Cascade Corporation. John B. Dallum argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Department of Labor. Tracey Rolfsen argued.

_____

HORTON, Justice.

This appeal concerns Boise, Inc.'s ("Boise")[1] discharge of Benjamin Ginther and the subsequent denial of Ginther's claim for unemployment insurance benefits at all stages below. Ginther argues that his firing was not due to misconduct in connection with his employment. For the reasons set forth below, we affirm.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Ginther went to work for Boise as a flexo operator on August 24, 2006.[2] Ginther's responsibilities included performing pre-start and set-up procedures and quality checks, as well as in-process quality checks to ensure the flexo was printing properly. Part of these checks and

---

[1] Ginther inaccurately named "Boise Cascade Corporation" as the employer in this case. Ginther was employed by Boise Paper Holdings, L.L.C., a wholly-owned subsidiary of Boise, Inc. at the time of his discharge.
[2] "Flexo" refers to a flexographic printing press. Flexography is a variant of letterpress printing and a popular method of applying print to cardboard boxes. *Handbook of Print Media* 29–30, 145–50 (Helmut Kipphan ed., 2001).

procedures included printing a single box, called a set-up box, before beginning a print run. This was done to verify that the flexo's set-up conformed to the customer's specifications before printing the complete order. Some orders consisted of several thousand boxes, necessitating a pre-start check to prevent the operators from accidentally producing large batches of non-conforming boxes.

During his employment with Boise, Ginther's supervisors initiated several disciplinary actions against him for failing to adhere to established quality assurance procedures. These disciplinary actions culminated in a document referred to by the parties as the "last chance agreement." This document, signed by the parties on August 18, 2008, addressed an incident wherein Ginther printed several thousand non-conforming units. According to the agreement, Ginther could have avoided the problem if he had followed Boise's quality control procedures. The agreement specified that Ginther would, as a condition of his continued employment, "follow all rules, policies and procedures," and that he understood any failure to do so would "result in disciplinary action up to and including termination of employment." This was to be Ginther's "one last opportunity to improve" his performance, as Boise had previously disciplined Ginther on two occasions for "quality/performance issues."

On October 9, 2008, Ginther contacted his supervisor to report a print quality problem, which he had since remedied. As Ginther's supervisor attempted to isolate the defective boxes, he noticed that all the boxes Ginther and his assistant had produced up to that point shared the same printing defect. The supervisor asked to see Ginther's set-up box in order to verify that the flexo had been set properly prior to beginning the print run. Ginther produced a defect-free set-up box. The supervisor compared the defective boxes with a box printed by the previous shift, and noticed the same defect on the boxes printed by the earlier shift. The supervisor then concluded that Ginther had run the set-up box *after* correcting the problem, and was attempting to conceal his failure to conduct a pre-run quality assurance check as required by Boise policy. The supervisor asked Ginther's assistant if this was so, and the assistant confirmed the supervisor's suspicions.

Boise terminated Ginther on October 14, 2008, for failing to abide by the terms of the last chance agreement and for dishonesty in giving the supervisor the defect-free set-up box instead of admitting that he had not run a set-up box prior to running the order.

2

The Idaho Department of Labor ("Department") denied Ginther's claim for unemployment compensation benefits, holding that Ginther was ultimately responsible for ensuring that the quality check was performed, he had failed to do so, and this failure constituted misconduct in connection with Ginther's employment as Ginther's conduct fell below a standard of behavior Boise had the right to expect.

Ginther appealed the Department's decision to the Department's Appeals Bureau, arguing that Boise policy placed the responsibility for conducting the quality assurance checks on both the operator and the assistant, and that Boise therefore should not have held him solely accountable for the error. The Appeals Bureau scheduled a telephonic hearing, and served Ginther with a notice of hearing via U.S. mail on December 8, 2008.

Several documents were admitted at the outset of the hearing, referred to in the transcript as Exhibits 1 through 6.[3] Although Ginther should have been provided copies of the proposed exhibits along with the notice of telephonic hearing, the certificate of service only reflects that Ginther was served with the notice of hearing. Ginther disputes ever having received copies of the exhibits. At the hearing, when the appeals examiner indicated that she was admitting Exhibits 1 through 6, Ginther did not object. The only indication from Ginther during the hearing that he did not have the exhibits was a statement he made while questioning a witness that he could not "seem to find that paper. . . ."[4]

The appeals examiner found that Boise discharged Ginther "for misconduct in connection with employment as defined by § 72-1366(5) of the Idaho Security Law" and that Boise's unemployment account was not chargeable for experience rating purposes.

---

[3] Our review of the exhibits reveals that Ginther would have been familiar with the contents of most of these documents. Exhibit 1 was the notice of telephonic hearing before the Appeals Bureau in which Ginther participated. Exhibit 2 described the procedures governing the appeals hearing. Exhibit 4 was the initial notice to Ginther from the Department informing him that his application for unemployment insurance benefits had been denied. Exhibit 5 was Ginther's request for an appeals hearing. Exhibit 6 detailed Ginther's wage history while employed by Boise.

Exhibit 3 is actually several documents, evidently supplied by Boise. The first page of the exhibit is a copy of an email sent to Ginther notifying him of the reasons for his termination. The second and third pages are written statements from Ginther's assistant and supervisor describing the events of October 9, 2008. The fourth page is a copy of the "last chance agreement." The fifth page relates to an earlier incident in which Ginther was disciplined as a result of a defective print run. The sixth through eleventh pages outline the job functions of a flexo operator. Thus, it appears that the only documents that may have been new to Ginther were the statements of his supervisor and assistant. Both testified at the appeals hearing and were cross-examined by Ginther.

[4] The Commission indicates in its decision that the audio recording of the hearing reflects that the appeals examiner "went through the exhibits with the parties" and that Ginther "did not object or raise a concern that he was missing any of the exhibits." The audio recording is not in the record before this Court and the transcript of the hearing does not reflect this discussion.

3

Ginther appealed the appeals examiner's decision to the Idaho Industrial Commission ("Commission"), arguing that he never received copies of the exhibits the examiner admitted into the record, and thus he had not had a fair hearing. He wrote in his appeal that he noticed the documents were missing prior to the conclusion of the hearing, but that he did not bring it to anyone's attention because the hearing was almost over. He also reiterated his argument that both he and his assistant were responsible for the quality assurance procedures, and thus he should not be deprived of unemployment compensation benefits because of the error.

The Commission denied Ginther's claim, finding both that Ginther received a fair hearing and that Boise had discharged Ginther for misconduct and thus he was not eligible for unemployment compensation benefits. Ginther timely appealed from this decision.

## II. STANDARD OF REVIEW

When reviewing a decision by the Commission, this Court is generally limited to questions of law. Idaho Const. Art. V, § 9. In reviewing factual decisions by the Commission, this Court's review is limited to determining whether the Commission's findings are supported by substantial competent evidence. I.C. § 72-732(1). The Court does not reweigh evidence or consider whether it would have reached a different conclusion based upon the evidence presented. *Uhl v. Ballard Med. Prod., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003).

Whether the government has violated a citizen's right to due process is a question of law, which this court freely reviews. *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007) (citing *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 510, 148 P.3d 1247, 1256 (2006)).

The Commission's determination whether an employee's behavior constituted misconduct is a factual determination that the Court will uphold if the determination is supported by substantial and competent evidence. *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997) (citing *Welch v. Cowles Publ'g Co.*, 127 Idaho 361, 364, 900 P.2d 1372, 1375 (1995)). This Court has defined "substantial and competent evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Folks*, 129 Idaho at 836, 933 P.2d at 645 (quoting *Welch*, 127 Idaho at 365, 900 P.2d at 1376). While conflicting evidence may exist in the record, the Court does not disturb the Commission's factual findings unless they are clearly erroneous. *McAlpin v. Wood River Med. Ctr.*, 129 Idaho 1, 5, 921 Idaho 178, 182 (1996) (citing *Ross v. Tupperware Mfg. Co./Premark*, 122 Idaho 641, 643, 837

P.2d 316, 318 (1992)). The Court will view all facts and inferences in the light most favorable to the party who prevailed before the Commission. *Higgins v. Larry Miller Subaru–Mitsubishi*, 145 Idaho 1, 4, 175 P.3d 163, 166 (2007) (citing *Neihart v. Universal Joint Auto Parts, Inc.*, 141 Idaho 801, 802–03, 118 P.3d 133, 134–35 (2005)).

## III. ANALYSIS

**A. Ginther has failed to properly advance his claim of error regarding the admission of the exhibits.**

In his initial briefing before this Court, the sole issue that Ginther identified and argued is his claim that the Commission erred in its determination that he was discharged for misconduct in connection with his employment. Ginther did, however, refer to the failure to provide him a copy of the exhibits in his statement of facts. In its responsive brief, the Department characterized the failure to provide Ginther with copies of proposed exhibits as a claimed procedural due process violation. The Department noted that Ginther had not cited "any propositions of law or legal authority to support his contention" and argued that this Court should not consider the issue.

When the appeals examiner informed the parties that she was admitting the exhibits, Ginther failed to object. He thus waived any right to raise the issue of the admission of the exhibits on appeal. "A litigant may not remain silent as to claimed error during a prior proceeding and later raise his objections for the first time on appeal." *Hoppe v. McDonald*, 103 Idaho 33, 35, 644 P.2d 355, 357 (1982). Further, although the Department may well have accurately discerned a potential claim of a procedural due process violation, Ginther did not advance this claim as an issue on appeal nor did he support the claim with legal argument or citation to authority. "We will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument." *Callaghan v. Callaghan,* 142 Idaho 185, 190, 125 P.3d 1061, 1066 (2005). For these reasons, we will not address the effect of the failure to provide copies of proposed exhibits.

**B. The Commission's finding that Boise discharged Ginther for misconduct in connection with his employment was supported by substantial competent evidence.**

Ginther argues that the Commission erred in its determination that he was discharged for misconduct in connection with his employment. A discharged employee is not entitled to unemployment benefits if he is "discharged for misconduct in connection with his employment." I.C. § 72-1366(5). Both the Idaho Administrative Code and this Court define misconduct as "(1)

a willful, intentional disregard of the employer's interest; (2) a deliberate violation of the employer's rules; or (3) a disregard of standards of behavior which the employer has a right to expect of its employees." *Chapman v. NYK Line N.A., Inc.*, 147 Idaho 178, 182, 207 P.3d 154, 158 (2009) (*quoting Quinn v. J.R. Simplot Co.*, 131 Idaho 318, 321, 955 P.2d 1097, 1100 (1998)); IDAPA 09.01.30.275.02 (2010). The Idaho Administrative Code provides that "[t]he test for misconduct in 'standard of behavior cases' is . . . (i) [w]hether the claimant's conduct fell below the standard of behavior expected by the employer; and (ii) [w]hether the employer's expectation was objectively reasonable in the particular case." IDAPA 09.01.30.275.02.c (2010).

"There is no requirement that the employee's disregard of the employer's expected standard of behavior must have been subjectively willful, intentional, or deliberate." *Welch v. Cowles Pub'g Co.*, 127 Idaho 361, 364, 900 P.2d 1372, 1375 (1995) (*citing Matthews v. Bucyrus–Erie Co.*, 101 Idaho 657, 659, 619 P.2d 1110, 1112 (1980)). Whether the discharge for misconduct is work-related is a factual determination. *Chapman*, 147 Idaho at 182, 207 P.3d at 158 (*citing Beaty v. City of Idaho Falls*, 110 Idaho 891, 892, 719 P.2d 1151, 1152 (1986)). The burden of proving misconduct is on the employer. *Id.*; IDAPA 09.01.30.275.01 (2010).

The test first requires the fact finder to answer two questions: (1) whether the employer had a standard of behavior it expected of the claimant, and (2) whether the claimant's behavior fell below that standard. According to the evidence admitted before the appeals examiner, Boise expected and required Ginther to perform the set-up and quality assurance checks before beginning a print run. These checks were in place to verify the flexo was operating and configured correctly and to prevent operators from printing non-conforming units. Testimony at the hearing established that Ginther was a qualified operator of this machine. Boise introduced evidence indicating that Ginther and/or his assistant would have discovered the October 9, 2008, error prior to initiating the run if one of them had completed the required checks. Ginther's assistant testified that Ginther did not run a set-up box until after they discovered the error. Although Ginther provided conflicting testimony, there was substantial competent evidence supporting the Commission's determination that Ginther did not perform—or ensure that his assistant performed—the set-up and quality assurance checks prior to initiating the print run in question. Thus, the Commission reasonably concluded Ginther's conduct fell below the standard of behavior Boise expected of Ginther.

There was substantial competent evidence supporting the Commission's conclusion that Boise's expectations were reasonable. Boise's internal operating criteria for flexo operators required the operator to perform all pre-start quality and in-process quality checks. Ginther had been an operator for "a while" and understood the process and procedures he was supposed to follow. Boise had previously disciplined Ginther on at least two occasions for his failure to follow quality assurance procedures. The last chance agreement, which Ginther signed, explicitly admonished Ginther to perform his quality checks and that failure to do so could result in his termination. There was testimony that one of the previous incidents for which Ginther had been disciplined had cost Boise $5,000.

Ginther argues that it was not reasonable for Boise to expect him to perform the quality checks himself because he alone did not bear the responsibility for performing them. Rather, both he and his assistant collectively bore that responsibility. Based upon evidence presented at the hearing, the Commission found that Ginther was ultimately responsible for ensuring that the quality checks were performed. Based upon the testimony provided by Ginther's supervisor, we find that there was substantial competent evidence supporting this finding.

Ginther also argues that Boise's disciplinary procedures were unreasonable because Boise never should have placed him on the last chance agreement in the first place. Ginther asserts that he was not at fault in one of the incidents that preceded the last chance agreement. Therefore, Ginther argues that it was not reasonable for Boise to place him on a last chance agreement and subsequently fire him for violating its terms. Ginther's argument is misplaced. The question before the Commission and this Court is not whether Boise's decision to terminate Ginther was wise or just; rather, the question for resolution is whether Boise terminated him for misconduct in connection with his employment. In the context of these proceedings, the last chance agreement is relevant only to the extent that it unambiguously communicated to Ginther that Boise expected him to comply with quality control procedures.

Ginther argues that this Court should rule that "simple performance errors on an over-worked and under-trained production line worker do not qualify as misconduct under the unemployment benefits statute." We are unable to do so. To adopt this request, we would have to make a factual determination that the conditions of Ginther's employment were such that Boise's expectation of compliance with its quality control procedures was unreasonable. In our view, this factual question is governed by the second prong of the misconduct analysis under

7

IDAPA 09.01.30.275.02.c. The Commission's factual determinations reflect its consideration of the evidence on this point. The Commission considered Ginther's testimony that Boise had reduced the crew on his machine down from three people to two in the preceding year, that the flexo was not operating properly on October 9, that Boise had inadequately trained him to operate that particular machine, and that the employees at Boise were under pressure to meet production quotas. Despite this testimony, the Commission did not find Boise's expectation that Ginther would perform his quality assurance checks under such conditions to be objectively unreasonable. As the Commission addressed the factual question Ginther now wishes this Court to answer differently, we are not free to substitute our view of the evidence for that of the Commission.

Because substantial and competent evidence supports the Commission's factual findings, we affirm the decision to deny Ginther's claim for unemployment insurance benefits.

## IV.  CONCLUSION

Ginther has failed to properly advance any claim of error regarding the admission of evidence before the appeals examiner. Substantial competent evidence supported the Commission's decision to deny Ginther's claim for unemployment insurance benefits. We therefore affirm. Costs to Respondents.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.